PURVIS GRAHAM LILES AND METTIE PACE LILES, PARENTS AND NEXT OF KIN OF GRAHAM RAY LILES, DECEASED, v. FAULKNER NEON & ELECTRIC COMPANY, EMPLOYER, AND IOWA NATIONAL MUTUAL INSURANCE COMPANY, CARRIER.

(Filed 31 October, 1956.)

**1. Master and Servant § 53b—**

The amount of an award of compensation under the Workmen's Compensation Act is prescribed by statute, and under the statute, as distinguished from a common law action for tort or a statutory action for wrongful death, recovery is based upon the injured employee's earnings rather than his earning capacity. G.S. 97-2(e).

**2. Same—**

Where the employee has worked less than 52 weeks prior to the accident, his average weekly wage as a basis of compensation must be determined by

dividing his earnings over the period of employment by the number of weeks or parts thereof during which the employee earned wages, subject to the proviso that by such method results fair and just to both parties will be obtained.

**3. Same—**

The provisions of G.S. 97-2(e) authorizing the Industrial Commission to have regard to the average weekly wage which a person of the same grade and character employed in the same class of employment would earn, or such other method of computing the average weekly wage as will most nearly approximate the amount the injured employee would be earning were it not for the injury, are predicated upon a finding by the Commission that results fair and just to both parties would not be obtained by computing the injured employee's average weekly wage, and the words "fair and just" must be related to the standard set up by the statute.

**4. Same—**

Where the injured employee is a part-time worker, a person of the same grade and character employed in the same class of employment, within the purview of G.S. 97-2(e), would be a part-time and not a full-time worker.

**5. Master and Servant § 55d—**

Whether the computation of the average weekly wage of the injured employee would not be fair and just to both parties upon the particular facts of the case, is a question of fact, but the Commission's findings in this regard are not conclusive if not supported by competent evidence or if predicated on an erroneous construction of the statute.

**6. Master and Servant § 53b—**

The fatally injured employee was a college student employed part time during vacation and after school, with his hours of work during a week varying from 17½ to 51 hours. There was no evidence that at the time of his injury he was earning or could thereafter earn greater wages in his part-time employment than he had previously earned. *Held:* The evidence does not warrant a finding that his average weekly wage during the term of his employment as a basis of compensation would not obtain results fair and just to both parties, compensation under the terms of the statute being based upon wages actually earned rather than earning capacity, and the standard set up by the statute being the amount which the injured employee would have earned had it not been for the accident.

**7. Master and Servant § 55h—**

Where the Supreme Court finds error in the Commission's decision in respect of the sole controversy presented by the appeal, G.S. 97-88 does not apply, and provision in the judgment appealed from that the insurer should pay costs, including attorney fee, will be stricken.

Johnson, J., not sitting.

Parker, J., dissents.

Appeal by defendants from *Fountain, Special Judge,* March Term, 1956, of Wilson.

Proceeding under Workmen's Compensation Act.

Defendants admit liability. The controversy relates solely to the amount of "average weekly wages" on which to base the award.

The only evidence was that offered by plaintiffs. It appears therefrom that decedent, upon graduation from Wilson High School, attended Atlantic Christian College for three semesters; that he then served two years in the armed services; that he then attended the University of North Carolina for one semester; that in 1954 he reentered Atlantic Christian College; and that on 16 October, 1954, he sustained an injury by accident, resulting in his death, which arose out of and in the course of his employment by defendant Faulkner Neon & Electric Company.

Mr. Littlejohn Faulkner, who was president of the Faulkner company and controlled its operations, testified in substance as follows:

Decedent was employed as a helper. He worked all or parts of eleven weeks. He was paid 75c an hour. Because of his school schedule, he had no set hours. "If he got off early in school, he came in early, and if he got off late, he came in late." He worked some hours practically every working day. One week he worked 51 hours. Another week he worked 49 hours. This was during the interval between summer school and the regular Fall Term. He worked 17½ hours the week ending October 8th, less than any other week. "He worked every available hour he could work . . . the average over the 11 weeks that he worked for us, the average that he earned, was $26.88 according to our books." His total wages for the eleven weeks were $295.72. The period of decedent's said employment was the employer's "peak work season." Other college boys were employed, also as helpers, on the same basis. There was no employee, except a full-time mechanic, who had worked for the employer as long as a year.

On direct examination, this question was asked: "Now, Mr. Faulkner, what was the average work week of the men doing work similar to Graham Ray Liles during the time that he was employed?" Over objection by defendants, the witness answered: "Well, it was 46 and a half hours at 75 cents, is the average." His further testimony was that 46½ hours was considered a full work week; and that if decedent had worked full time instead of going to school part of the time he would have earned $34.88 per week, being wages for 46½ hours at 75c per hour.

The findings of fact made by the Hearing Commissioner include the following: "1. That Graham Ray Liles was a student at Atlantic Christian College at the time of his death; that he was 23 years of age and had never been married; that during the time when he was not attending classes and was not busy with his studies he was employed in a part-time capacity by the defendant; (that by reason of the short-

ness of time during which Graham Ray Liles was employed or the casual nature or terms of his employment it would be impractical to compute his average weekly wage by basing same on his average earnings for the previous 52 weeks;) (that the deceased employee's average weekly wage, based upon the earnings of a person of the same grade and character employed in the same class of employment in the same locality or community, was $34.88.) "

By proper exceptions and assignments of error, defendants challenged the findings indicated by parentheses and the competency of designated portions of the evidence.

The conclusions of law made by the Hearing Commissioner included the following: "Three methods are given by statute for computing average weekly wage: (a) where the employment has been continuous for at least 52 weeks; (b) where the employment has extended over a period of less than 52 weeks, and (c) where, by reason of a shortness of time or the casual nature or terms of the employment it is impracticable to compute the average weekly wages by method (a) or (b). G.S. 97-2(e). The Commission concludes as a matter of law that results fair and just to both parties cannot be obtained by methods (a) or (b) above set out; that by reason of the casual nature or terms of his employment it would be impractical to compute his average weekly wage by basing same on his average earnings for the previous 52 weeks; and that the deceased employee's average weekly wage, based upon the earnings of a person of the same grade and character employed in the same class of employment in the same locality or community, was $34.88. *Mion v. Marble & Tile Co.,* 217 N.C. 743; *Munford v. Construction Co.,* 203 N.C. 247."

By proper exceptions and assignments of error, defendants challenged the quoted conclusions of law.

Based on the findings of fact and conclusions of law of the Hearing Commissioner the award made was at the rate of $20.93 (60% of $34.88) per week for a period of 350 weeks from 17 October, 1954.

Upon appeal, the Full Commission adopted as its own the findings of fact and conclusions of law of the Hearing Commissioner and affirmed the award based thereon.

Upon appeal therefrom, the court below overruled defendants' assignments of error to the findings of fact and conclusions of law made by the Full Commission; and the said award was affirmed.

The judgment signed and entered in Superior Court also contained this provision: "It appearing to the Court and the Court finding that the proceedings here were brought by an appeal by the insurer and that the insurer should pay the plaintiffs' costs, it is ordered that the costs to the plaintiffs of these proceedings, including a reasonable fee to their

attorneys to be determined by the Industrial Commission, shall be paid by the insurer."

Defendants excepted and appealed. They assign as error, *inter alia,* the indicated findings of fact and conclusions of law and the quoted provision of the judgment relating to the payment by them of plaintiffs' costs.

*Carr & Gibbons for plaintiffs, appellees.*
*Ruark, Young & Moore for defendants, appellants.*

BOBBITT, J. Is the evidence sufficient to support the Commission's conclusion that it would be unfair and unjust to compute decedent's "average weekly wages" by dividing his total earnings by eleven, whereby the result would be $26.88, and to warrant the finding and conclusion that the award should be based on "average weekly wages" of $34.88? The court below answered in the affirmative. We are constrained to hold that controlling statutory provisions necessitate a negative answer.

Unquestionably, decedent had the capacity to earn $34.88 per week "in the employment in which he was working at the time of the injury." The fact is that he earned "average weekly wages" of $26.88. Presumably, full-time work would have been available to him in this employment. The fact is that "he was employed in a part-time capacity." He worked whenever he was free to do so. The fact is that while attending college he was not available for full-time work.

In a common law tort action, or in a statutory action for wrongful death, earning capacity, present and prospective, is an important and proper element of damages. A workman's compensation claim, which is not based on tortious conduct, is unknown to the common law; and the basis for the award as well as the validity of the claim is determinable solely by the provisions of the statute. Under applicable statutory provisions, may an award be based on *earning capacity* of the injured employee in the employment in which he was working at the time of the injury?

Under G.S. 97-2(e), "average weekly wages" of the employee "in the employment in which he was working at the time of the injury" must be related to *his earnings* rather than to his earning capacity. The word "average" is defined by Webster as "a mean proportion, medial sum or quantity made out of unequal sums or quantities." *Stevens v. Black, Sivalls & Bryson,* 39 N.M. 124, 42 P. 2d 189. Within the statutory limits, the method for determining such "average weekly wages" depends on the facts of each case.

If the employee has worked in such employment during the period of fifty-two weeks immediately preceding the day of injury, the prescribed

(first) method is to divide his total earnings during that period by fifty-two. The "average weekly wages" so determined may exceed the employee's weekly wages at the time of his injury, for example, where his compensation during the early part of the 52-week period exceeds his compensation during the latter part thereof. *Honeycutt v. Asbestos Co.,* 235 N.C. 471, 70 S.E. 2d 426. The Commission found that "it would be impractical to compute his (decedent's) average weekly wages by basing same on his average earnings for the previous 52 weeks." Obviously, it would be impossible to do so.

The said first method does not apply when as here the period of employment prior to injury is less than fifty-two weeks. In such case the prescribed (second) method is to divide the employee's earnings over the period of employment by the number of weeks or parts thereof during which the employee earned wages, subject to the proviso that by such method results fair and just to both parties will be obtained. If determined by this method, decedent's "average weekly wages" were $26.88.

If results fair and just to both parties will not be obtained by application of the said second method, another (third) method is prescribed, viz.: "Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, *regard shall be had* to the average weekly amount *which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment* in the same locality or community." (Italics added.)

A further provision is in these words: "But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, *such other method* of computing average weekly wages may be resorted to *as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.*" (Italics added.) This provision, while it prescribes no precise method for computing "average weekly wages," sets up a standard to which results fair and just to both parties must be related.

The Commission undertook to apply the said third method. Careful consideration of the evidence impels the conclusion that there is no factual basis for its application. There is no evidence as to the average weekly amount being earned during the fifty-two weeks previous to decedent's injury by a person of the same grade and character employed in the same class of employment. Nor is there evidence as to the average weekly amount a part-time worker, employed as a helper, had earned during the fifty-two weeks previous to decedent's injury, while working for this employer or any other in the same locality or

community. A person of the same grade and character employed in the same class of employment would be a part-time, not a full-time worker. This construction is in accord with decisions in other jurisdictions having similar statutory provisions. *In re Rice,* 229 Mass. 325, 118 N.E. 674, Ann. Cas. 1918E 1052; *White v. Pinkerton Co.,* 155 Tenn. 232, 291 S.W. 448; *Ruppert v. Plattdeutsche, Volksfest Verein,* 263 N.Y. 338, 189 N.E. 240; *Barlog v. Board of Water Com'rs,* 239 App. Div. 225, 267 N.Y.S. 822; *Derion v. Gilford Mfg. Co.,* 282 App. Div. 788, 122 N.Y.S. 2d 444; *State Road Commission v. Industrial Commission,* 56 Utah 252, 190 P. 544; *Brisendine v. Skousen Bros.,* 48 Ariz. 416, 62 P. 2d 326, 112 A.L.R. 1089. There is no evidence that any part-time worker, the nature of whose employment was similar to that of decedent, earned "average weekly wages" over *his period of employment* greater than $26.88. The inescapable fact is that the Commission determined the "average weekly wages" of a part-time employee to be the amount *he would have earned* had he been a full-time employee.

In *Munford v. Construction Co.,* 203 N.C. 247, 165 S.E. 696, decedent had been employed some three months at the time of his injury. The Commission had found as a fact that decedent's work "in the beginning of his employment . . . was not regular, but later he was assigned a truck and placed upon regular duty." Based thereon, the Commission made a further unchallenged finding of fact that results fair and just to both parties would not be obtained by said second method; and this Court upheld an award based on the average weekly amount earned by a person of the same grade and character employed in the same class of employment, to wit, a full-time truck driver.

In *Mion v. Marble & Tile Co., Inc.,* 217 N.C. 743, 9 S.E. 2d 501, the decedent, who had worked less than fifty-two weeks prior to his injury, had twice received an increase in hourly pay. This Court held erroneous an award based on his average weekly wages during the last seven weeks of his employment, during which his compensation was greater than during the preceding portion of his period of employment. As stated by *Winborne, J.* (now *C. J.*): "There is no finding that under the method provided as stated above (second method) for ascertaining the average weekly wage, the results here would be unfair to both parties, nor is there evidence tending to show such state of facts."

In *Early v. Basnight & Co.,* 214 N.C. 103, 198 S.E. 577, decedent, who had been a warehouse clerk for three years or thereabout, was promoted to the position of salesman some six months before his fatal accident. When injured his salary was $100.00 per month, or $23.07 per week, substantially more than he had earned as warehouse clerk. This Court held the evidence sufficient to support these findings by the Commission: "(4) That for exceptional reasons the average weekly wage of the plaintiff's deceased over the twelve months immediately

preceding his injury and death would be unfair to the deceased employee and his dependents. (5) That the plaintiff's deceased would have been earning $23.07 per week if it had not been for the injury." It is noted that this statement appears in the opinion of the Commission: "The Full Commission has not taken into consideration the anticipated increase, but has given consideration to the actual increase that the deceased received from 1 January to 16 March." This Court held that the words, "the foregoing," in the second paragraph of G.S. 97-2(e) referred *to the three methods* set out in the first paragraph thereof. *Winborne, J.* (now *C. J.*), speaking for this Court, said: "Hence, it is manifest that where exceptional reasons are found which make the computation on the basis of either of 'the foregoing' methods unfair to the employee, the Legislature intended that the Industrial Commission might resort to such other method of computing the average weekly wages *as would most nearly approximate the amount the injured employee would be earning if he were living.*" (Italics added.)

True, as stated by *Clarkson, J.*, in *Munford v. Construction Co., supra*, all provisions of G.S. 97-2(e) must be considered in order to ascertain the legislative intent; and the dominant intent is that results fair and just to both parties be obtained. Ordinarily, whether such results will be obtained by the said second method is a question of fact; and in such case a finding of fact by the Commission controls decision. However, this does not apply if the finding of fact is not supported by competent evidence or is predicated on an erroneous construction of the statute.

The words "fair and just" may not be considered generalities, variable according to the predilections of the individuals who from time to time compose the Commission. These words must be related to the standard set up by the statute. Results fair and just, within the meaning of G.S. 97-2(e), consist of such "average weekly wages" as will most nearly approximate the amount which the injured employee *would be earning* were it not for the injury, in the employment in which he was working at the time of his injury. In *Munford v. Construction Co., supra*, the actual earnings of the employee at the time of his injury were the wages of a full-time truck driver; and in *Early v. Basnight & Co., supra*, the actual earnings of the employee at the time of his injury were those of a salesman, not those of a warehouse clerk.

When G.S. 97-2(e) is so construed, the evidence does not warrant a finding of fact or conclusion of law that the said second method would not obtain results fair and just to both parties. There is no evidence that decedent at the time of his injury was earning or would thereafter earn greater wages in his said part-time employment than he had previously earned. On the contrary, his greater earnings in his said part-time employment were before the regular college term began; and, when

the said second method is applied, plaintiffs get the benefit of his greater earnings during that period.

We are mindful of persuasive reasons in favor of statutory provisions under which the rule contended for by appellees would be applied. In a similar situation, *Brickley, J.*, speaking for the Supreme Court of New Mexico in *Stevens v. Black, Sivalls & Bryson, supra,* aptly said: "However this may be, it is beyond our power to regulate, our sole task is to ascertain the measure of compensation fixed by the statute. If the statute does not work with justice to the workmen, this is a matter for the Legislature."

After the decision in the *Stevens case* (1935), *supra,* the New Mexico statute was amended. As amended, it provided in substance that where an employee is being paid by the hour the daily wage of such employee, as basis for an award, is to be determined by multiplying the number of working hours in the day of the employee's injury by his hourly rate of pay; and that his weekly wage is to be determined by multiplying his said daily wage by the number of working days or fractions thereof in the week of the employee's injury. A new formula was thus substituted for the original provisions. *La Rue v. Johnson,* 47 N.M. 260, 141 P. 2d 321 (1943). In the *La Rue case, Brice, J.,* cites and discusses cases from other jurisdictions based on statutory provisions similar to those contained in the *amended* New Mexico statute. In doing so, he draws the distinction between such statutory provisions and those where compensation "is based upon actual earnings, and not upon capacity to earn." Unfortunately for appellees, our statute falls into the latter classification.

Upon this record, the "average weekly wages" of decedents are to be computed in accordance with the said second method prescribed by G.S. 97-2(e). Hence, there is error in the judgment of the court below; and, upon certification of this opinion, the court below will remand the proceeding to the Commission to the end that it enter an award based on "average weekly wages" under G.S. 97-2(e) as construed herein.

Also, there is error in the portion of the judgment of the court below requiring defendant carrier to pay plaintiffs' costs, including attorney fee, incident to the appeal by defendants from the Commission to the Superior Court. G.S. 97-88 does not apply when as here this Court finds error in the Commission's decision in respect of the sole controversy presented by the appeal.

Error and remanded.

JOHNSON, J., not sitting.

PARKER, J., dissents.