LUCILLE H. MABRY, Mother; SHEILA MABRY WHITLEY, Sister; FRANK W. MABRY, Brother; CLAY DANIEL MABRY, Deceased Employee, Plaintiffs v. BOWERS IMPLEMENT COMPANY, Employer JOHN DEERE INSURANCE COMPANY, Carrier Defendants

No. 7910IC1179

(Filed 5 August 1980)

**Master and Servant § 70– workers' compensation – distributive education student – computation of average weekly wage**

　　Employees who are employed in distributive education programs may

not be fairly and justly classified as full-time for purposes of the Workers' Compensation Act; therefore, the Industrial Commission erred in determining a deceased minor employee's average weekly wage on the basis of eleven weeks during the summer when he worked full-time, and the Commission should have averaged the eleven weeks of full-time with the forty-one weeks of part-time employment contemplated in his distributive education job at the undisputed hourly rate of $2.65 in order to reach a result fair and just to both the employee and employer.

APPEAL by defendants from the North Carolina Industrial Commission. Opinion and award entered 21 September 1979. Heard in the Court of Appeals 21 May 1980.

Clay Daniel Mabry, a minor, died on 24 August 1978 as a result of injuries received by him in an accident arising out of and in the course of his employment with defendant Bowers Implement Company (Bowers). Mabry was not survived by dependents. Mabry was hired by Bowers on 31 May 1978 as a distributive education employee. At the time he was employed by Bowers, Mabry was an eleventh grade student. Under the distributive education program, students attend school for half a day and work in a trade half a day. Mabry worked at Bowers under this type of employment from 31 May 1978 to 8 June 1978, when he began working full time for Bowers. On 24 August 1978, he returned to school and resumed his part-time employment with Bowers — from 1:00 p.m. to 5:00 p.m., five days a week. His rate of pay at all times he was employed by Bowers was $2.65 per hour.

Hearing Commissioner Roney found that Mabry earned $1,303.90 in his employment with Bowers over a seventy-nine day period, that his average weekly wage was $115.57. Deputy Commissioner Roney further found that defendant Bowers covered its worker's compensation risk with a standard policy of insurance, the premium for which was based on anticipated payroll subject to policy year audit, and that Mabry's "salary" was by reasonable inference included in Bowers' payroll for the purposes of premium computation. Upon his findings of fact, Deputy Commissioner Roney entered the following pertinent conclusions of law:

1. "Where the employment prior to the injury extended

over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employees earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained." N.C.G.S. 97-2(5). Use of actual earnings to compute, as above described, decedent's average weekly wages does not yield a figure unfair and unjust to defendant carrier where the premium for assumption of defendant employer's workmen's compensation risk is based on actual payroll, inclusive of decedent's salary. N.C.G.S. 97-93; N.C.G.S. 97-98.

2. Decedent's average weekly wages were $115.57. N.C.G.S. 97-2(5). The compensation rate for death in this claim is $77.04. N.C.G.S. 97-29.

On appeal, Commissioner Roney's order was affirmed by the Full Commission, and from that order, defendants bring this appeal.

*Coble, Morton, Grigg & Odom, by Ernest H. Morton, Jr., for plaintiff appellees.*

*Teague, Campbell, Conely & Dennis, by George W. Dennis III, for defendant appellants.*

WELLS, Judge.

The sole question presented on this appeal is whether the Commission erred in calculating Mabry's average weekly wage for compensation purposes. The pertinent portions of G.S. 97-2(5) are as follows:

Average Weekly Wages. — "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, including the subsistence allowance paid to veteran trainees by the United States government, provided the amount of said allowance shall be reported monthly by said trainee to his employer, divided

by 52; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

Wherever allowances of any character made to an employee in lieu of wages are specified part of the wage contract they shall be deemed a part of his earnings.

Where a minor employee, under the age of 18 years, sustains a permanent disability or dies leaving dependents surviving, the compensation payable for permanent disability or death shall be calculated, first, upon the average weekly wage paid to adult employees employed by the same employer at the time of the accident in a similar or like class of work which the injured minor employee would probably have been promoted to if not injured, or, second, upon a wage sufficient to yield the max-

imum weekly compensation benefit. Compensation for temporary total disability or for the death of a minor without dependents shall be computed upon the average weekly wage at the time of the accident, unless the total disability extends more than 52 weeks and then the compensation may be increased in proportion to his expected earnings.

\* \* \*

The "averaging" question has been before our courts on a number of previous occasions, involving a variety of factual backgrounds. A previous case with a factual basis closely analogous to the one now before us is *Liles v. Electric Co.*, 244 N.C. 653, 94 S.E. 2d 790 (1956). In *Liles* the deceased worker was a college student. Because of his college schedule, he had no set hours of employment, but worked as his schedule allowed. His work week varied from a low of seventeen and one-half hours to a high of fifty-one hours during the eleven weeks he worked. Based upon the total number of weeks worked and his total pay over the eleven week period, his average weekly pay was $28.88. At the Industrial Commission hearing, his employer testified that other workers employed by the company for the same type of work worked an average of forty-six and one-half hours per week, at seventy-five cents per hour for an average of $34.88 per week. The Commission considered the various statutory schemes for averaging and concluded that by reason of the casual nature of Liles' employment it would be impractical to compute his average weekly wage by basing it on his average earnings for the previous fifty-two weeks. The Commission further concluded that "the deceased employee's average weekly wage, based upon the earnings of a person of the same grade and character employed in the same class of employment in the same locality or community was $34.88."

The Supreme Court found this conclusion to be in error, holding that a person of the same grade and character employed in the same class of employment would be a part-time, not a full-time worker. The Court further held that in such circumstances, the employee's average weekly wages should be computed by dividing the employee's earnings over the period

of employment by the number of weeks or parts thereof during which the employee earned wages, subject to the proviso that by such method, results fair and just to both parties be obtained. In other words, in *Liles* the Court rejected as unfair and unjust a method which emphasized the worker's earnings during periods of full employment to the exclusion of consideration of the part-time nature of the employment.

A more recent case, *Joyner v. Oil Co.*, 266 N.C. 519, 146 S.E. 2d 447 (1966), while involving a somewhat different factual situation, is supportive of the reasoning, logic, and result of *Liles*. The thrust of the Court's decision in both *Liles* and *Joyner* is that to be fair and just to both employee and employer in such cases, the Commission must recognize that the employment involves periods of peak and less than peak employment. Similarly, we hold that employees who are employed in distributive education programs — by the very nature of their employment program — may not be fairly and justly classified as full-time for purposes of the Worker's Compensation Act. An employer's participation in these programs accepts at the threshold the limitations on the employee's available work time associated with school attendance.

Plaintiff argues that the decision of our Supreme Court in *Hensley v. Caswell Action Committee*, 296 N.C. 527, 251 S.E. 2d 399 (1979) compels us to affirm the Commission's determination here because the provisions of G.S. 97-2(5) relating to minors require that Mabry's average weekly wage be computed so as to yield the maximum weekly compensation benefit. We do not agree. *Hensley* is distinguishable on the facts. It did not involve an employee working under a distributive education program. Under a distributive education program, there are no "adults" employed in a "similar or like class of work" in the sense these terms are used in the statute.

The Commission erroneously concluded that because there was evidence that the employer had paid a worker's compensation insurance premium based upon Mabry's actual earnings from his employment with Bowers, his compensation basis should be classified as full. The "fair and just" language found in G.S. 97-2(5) relates to determining what the employee would

have earned but for the injury. While the premium paid by the employer for worker's compensation insurance coverage may be competent evidence as to the parties' recognition of the worker's status, it is not in any sense determinative as to the "fair and just" result as contemplated under G.S. 97-2(5).

The facts in this case require the Commission to average the eleven weeks of full-time with the forty-one weeks of part-time employment of Clay Daniel Mabry contemplated in his distributive education job with Bowers Implement Company, at the undisputed hourly rate of $2.65. By so doing, the Commission will reach a result fair and just to both employee and employer.

This matter is remanded to the Full Industrial Commission for entry of an order and award consistent with this opinion.

Reversed and remanded.

Judges WEBB and MARTIN (Harry C.) concur.