The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, which the Full Commission adopts with minor modification including the modification of Finding of Fact Number 13.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The date of the injury, which is the subject of this claim, is 3 November 1998.
2. On such date, the parties hereto were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. On such date, defendant-employer employed three or more employees.
4. On such date, defendant-employer was a self-insured company and GAB Robins North America is the adjusting agent.
5. The primary issue for determination is whether plaintiff was an employee of defendant-employer or an independent contractor.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, age twenty-seven at the time of the hearing before Deputy Commissioner Holmes, has a tenth grade education and no special skills or training. Prior to working with defendant-employer, she had worked in restaurants, in a cotton mill and for a cleaning service. She had never been employed as a driver or a courier. She was not engaged in an independent business, calling or occupation.
2. Plaintiff began working for defendant-employer on 3 February 1998 as a courier. She was required to have a drivers license, van and her own insurance. She paid for her own gas. However, she was required to have magnetic signs on the side of her van with defendant-employers name and logo on it. She was required to wear a uniform with defendant-employers name and her name on it.
3. Plaintiffs duties included driving a regular route in which she made pick-ups and deliveries from approximately thirty banks in the Charlotte area at times specified by defendant-employer. She did not have discretion in determining when or how to perform her duties. She usually reported to defendant-employers office at 1:45 p.m. and completed her work between 3:00 and 3:30 a.m., five days per week. She also wore a pager and was available for other errands as needed when defendant-employer paged her. At the end of every day, she submitted a report showing the deliveries and pick-ups with signatures.
4. Plaintiff was paid $572.00 per week for completing the bank route. Her salary did not increase when additional stops were added to her route. Further, she was also paid fifty percent of any fees generated by her "on-call runs.
5. Neither taxes nor social security was taken out of her paycheck. Therefore, when she filed her tax returns, she did so indicating she was self-employed and deducted for the costs of her work radio, uniforms and other expenses.
6. On 22 September 1998, defendant-employer presented plaintiff with a document entitled Independent Contractor Agreement for Transportation Services, which plaintiff signed as a condition to the continued performance of her duties. Although the document purports to define plaintiffs relationship with defendant-employer as that of an independent contractor, the terms of the document do not reflect the true nature of the relationship.
7. Although the document sets forth that plaintiff may hire, control and direct her own employees and that defendant-employee may not, with limited exceptions, request plaintiff to discontinue use of any particular employee, defendant-employer refused to allow plaintiff to retain her husband, an experienced courier driver, to perform her route when she was disabled. Thus, she was not free to hire, use or control assistants.
8. Plaintiff was an employee of defendant-employer.
9. On 3 November 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she was involved in an automobile accident while performing a call. She sustained a broken right hip and fractured jaw. Surgery was performed on her hip on 4 November 1998.
10. On 10 November 1998, while still hospitalized, plaintiff fell and sustained a recurrent dislocation and fracture. As a result, a second surgery was performed on that date.
11. Plaintiff was placed in a body cast from under her breast, down to the left knee and down the right leg. She was released from the hospital on 17 November 1998 and was bed-ridden until the cast was removed on 12 January 1999. She primarily used a wheelchair until February 1999 when she began using crutches on a limited basis. By March 1999, she was using only one crutch. Around early April 1999, plaintiff began using a cane.
12. As of the date the record closed in this matter, plaintiff had not been released by her doctors to return to work. Thus, as a result of the injury by accident, plaintiff was unable to earn wages in her employment with defendant-employer or in any other employment from 3 November 1998 through at least 17 May 1999.
13. Plaintiff did not work for defendant-employer for a full 52 week period, therefore her average weekly wage must be calculated using the second method which allows for the division of the employees earnings by the number of weeks actually worked, provided that fair and just results are obtained. Accordingly, as reflected on plaintiffs 1998 tax return, she earned $30,890.63 from defendant-employer from 3 February through 3 November 1998, the period she worked during that year. In light of plaintiffs itemized deductions and the fact she had not worked for defendant-employer for 52 weeks, the fair method of calculating plaintiffs average weekly wage to most nearly approximate the amount she would be earning but for the injury is to allow for $9,996.87 in expenses to be subtracted from the gross income earned, yielding a net income from defendant-employer in the amount of $20,893.76, which is then divided by the number of weeks actually worked. Thus, based upon the 274 days plaintiff worked in 1998, plaintiffs average weekly wage is $534.37.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff was an employee of defendant-employer on 3 November 1998. N.C.G.S. 97-2(2).
2. Plaintiffs average weekly wage was $534.37. N.C.G.S. 97-2(5);Liles v. Faulkner Neon Elec. Co., 244 N.C. 653, 94 S.E.2d 790
(1956); Baldwin v. Piedmont Woodyards, Inc., 58 N.C. App. 602,293 S.E.2d 814 (1992).
3. On 3 November 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. 97-2(6).
4. As a result of the 3 November 1998 injury by accident, plaintiff became temporarily and totally disabled on 3 November 1998 and continued to be temporarily and totally disabled as of the time the record closed in this matter. She is thus is entitled to compensation at the weekly rate of $356.24 from 3 November 1998 and continuing subject to a reasonable attorneys fee. N.C.G.S. 97-29.
5. Subject to the limitations of N.C.G.S. 97-25.1, plaintiff is entitled to reasonably necessary medical treatment as a result of the 3 November 1998 injury by accident, which tends to effect a cure, provide relief or lessen the period of her disability. N.C.G.S. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant-employer shall pay temporary total disability compensation to plaintiff subject to the attorneys fee hereinafter approved at the weekly rate of $356.24 for the period beginning 3 November 1998 and continuing until plaintiff returns to work at pre-injury wages or until further order of the Industrial Commission. The part of this compensation that has accrued shall by paid in a lump sum to plaintiff, subject to the attorneys fee approved hereinafter.
2. Defendant shall pay all reasonably necessary medical expenses arising from this injury by accident, which tend to effect a cure, provide relief or lessen the period of disability.
3. An attorneys fee in the amount of twenty-five percent is approved for plaintiffs attorney, said amount to be deducted from the accrued amount currently due plaintiff, and then thereafter every fourth compensation check due plaintiff shall be paid directly to her attorney.
4. Defendant shall pay the costs due this Commission.
This the ___ day of June 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/bjp/nwg