FRANCES JAMES, Employee, Plaintiff v. CAROLINA POWER & LIGHT (now PROGRESS ENERGY), Employer, RSKCo, Servicing Agent, Defendants

No. COA10-1136

(Filed 7 June 2011)

## 1. Workers' Compensation— average weekly wage—method of calculating

The Industrial Commission erred in a workers' compensation case in calculating plaintiff's average weekly wage where the nature of her work for the employer varied and the Commission found that plaintiff had worked less than fifty-two weeks, triggering the third statutory method of calculating compensation, without a finding that method one would be unfair.

## 2. Workers' Compensation— disability—evidence and findings

The evidence in a workers' compensation case regarding plaintiff's disability supported the findings, which supported the conclusions.

**3. Workers' Compensation— authorization for medical treatment—reasonable time**

The Industrial Commission's conclusions in a workers' compensation case that plaintiff sought authorization for medical treatment within a reasonable time were supported by the findings, which were supported by the evidence.

**4. Workers' Compensation— authorized medical care—prior to date of request**

The Industrial Commission erred in a workers' compensation case by limiting authorized medical care to that received on or after the date plaintiff requested authorization for the treatment.

Appeal by Defendants and cross-appeal by Plaintiff from Opinion and Award entered 16 February 2007 by the Full Commission of the North Carolina Industrial Commission (Commission). Heard in the Court of Appeals 9 March 2011.

*Anderson & Anderson, by Michael J. Anderson, for Plaintiff-Appellee/Cross-Appellant.*

*Teague, Campbell, Dennis & Gorham, LLP, by Bruce A. Hamilton and Tamara R. Nance, for Defendant-Appellants.*

BEASLEY, Judge.

Where Plaintiff sought the Commission's approval for her unauthorized medical treatment within a reasonable time, and where the Commission ordered reinstatement of temporary total disability, we affirm. Where the Commission did not properly calculate Plaintiff's average weekly wage, we reverse and where the Commission limited medical care authorized to that received by Plaintiff on or after a certain date, we reverse and remand.

On 23 November 1999, Frances James (Plaintiff) sustained an admittedly compensable injury while working for Carolina Power & Light, now Progress Energy (Employer). Employer and servicing agent RSKCo. (collectively Defendants) accepted Plaintiff's claim on 31 December 1999 until their Form 24 Application was approved on 23 August 2002 and Defendants were allowed to suspend Plaintiff's ongoing temporary total disability compensation as of 5 July 2002. On 31 December 2002, Plaintiff filed a Form 33, noting the parties' disagreement on the issue of disability, and a hearing was held on 11 August 2003. Defendants appealed the deputy commissioner's opinion

and award to the Full Commission, which issued an opinion and award on 16 February 2007. Defendants filed an appeal on 16 March 2007, which this Court dismissed as interlocutory, as Plaintiff had moved for reconsideration of the Full Commission's opinion and award on 6 March 2007. *James v. Carolina Power & Light*, No. 189 N.C. App. 210, 657 S.E.2d 445 (2008) (unpublished). The Full Commission denied Plaintiff's motion for reconsideration by written order entered 5 August 2009, and both parties now appeal from the 16 February 2007 opinion and award. For the following reasons, we affirm in part and reverse in part and remand.

Prior to the subject injury, Plaintiff had been rendered a paraplegic as the result of a car accident in 1989. Plaintiff underwent several years of extensive rehabilitation and, on 18 November 1997, began working for Employer as a switchboard operator on a part-time basis. In September 1998, Plaintiff was involved in another non-work-related accident when a vehicle struck her as she was crossing the street in her wheelchair. Following the 1998 incident and treatment for various symptoms, including legs, arm, and finger pain and bowel control problems, Plaintiff obtained a full-time job with Employer on 26 April 1999 as a support assistant in I/T. In the course of her employment on 23 November 1999, Plaintiff was hand-delivering a package of diskettes to a co-worker in another building and crossing the street at a pedestrian crosswalk when a van hit her wheelchair repeatedly. Defendants accepted the compensability of Plaintiff's injury and began making payments for benefits at a compensation rate of $293.92 per week, based on an average weekly wage of $440.86.

Upon Employer's first Form 24 Application, the Commission, on 15 March 2000, ordered Plaintiff to comply with all reasonable and prescribed medical treatments and vocational rehabilitation provided by Defendants. At that point, Plaintiff's treatment had included emergency services at Raleigh Community Hospital (RCH), immediately following the injury, and then at the WakeMed Hospital Emergency Room on 1 December 1999. On 9 December 1999, Plaintiff presented to WakeMed for treatment and evaluation of severe back pain and changes with her bowel movements that she had begun to suffer following the work-related accident. She was admitted by her family doctor, Dr. Charles Cook, who examined Plaintiff and referred her to neurosurgeon, Dr. Robin Koeleveld. On 10 December 1999, Dr. Koeleveld examined Plaintiff and concluded that she had developed a new spinal fracture and noted that the trauma from her work injury

was causing lower back pain and rectal numbness. Dr. Koeleveld prescribed a brace to allow Plaintiff's fracture to heal.

As Plaintiff continued to experience chronic back pain following her release by Dr. Koeleved on 8 February 2000, Dr. Charles Cook referred her to Dr. David Cohen, an orthopedic surgeon at Johns Hopkins Hospital in Baltimore, Maryland. Dr. Cohen first examined Plaintiff on 23 March 2000 and, after a second visit on 10 May 2000, recommended surgery to decompress the spinal cord to address Plaintiff's posterior discomfort. After Dr. Cohen performed surgery on 17 June 2000, Plaintiff moved to South Carolina and began seeing her family practitioner, Dr. Raymond Sy on 18 July 2000. Defendant had requested a second opinion evaluation, and Dr. Robert Elkins examined Plaintiff on 12 February 2001. Dr. Elkins provided his opinion that Plaintiff had reached maximum medical improvement of her work-related injury, rating her as having a 30% impairment to her spine for the November 1999 accident.

When Dr. Sy began treating Plaintiff, she was being treated for severe depression and also had complete bowel and urinary incontinence. During this time, Plaintiff also saw Dr. Cohen for follow-up appointments and reported that the surgery had provided relief for her back pain but that her bowels remained incontinent. At her two-year follow-up appointment, in March 2002, Dr. Cohen considered Plaintiff to have reached maximum medical improvement with respect to her loss of bowel sensation. Around that same time, a vocational assessment of Plaintiff was performed, and the file was transferred to vocational rehabilitation counselor, Frances Somogyi, on 16 April 2002. Plaintiff had just begun a bowel incontinence program when Ms. Somogyi contacted her to begin vocational rehabilitation, and Plaintiff repeatedly informed the counselor that she felt she could not participate in vocational rehabilitation due to her bowel incontinence. During the course of her vocational rehabilitation program, Plaintiff failed to comply with several of Ms. Somogyi's requests, including registering with a job seeking service, placing applications with potential employers, and registering for an online tutorial to enhance her keyboarding skills. Plaintiff also missed two scheduled interviews, despite being under the order of cooperation from 15 March 2000. Defendants then filed a second Form 24 on 5 July 2002, which was granted by order dated 23 August 2002, suspending benefits as of the date Defendants' application was filed for Plaintiff's unjustified non-compliance and refusal to comply with vocational rehabilitation. Thereafter, Dr. Christopher Lahr adjusted

Plaintiff's bowel medication regimen and, on 15 November 2002, wrote a letter to Ms. Somogyi to inform her that Plaintiff could not keep all of her appointments, due to uncontrollable bowel activity.

As of 23 April 2003, Dr. Sy was of the opinion that due to Plaintiff's bowel incontinence and depression, she was unable to work in a public setting but may be able to work at home. Dr. Sy also attributed Plaintiff's inability to work or focus on work to her post-traumatic stress disorder (PTSD) resulting from the November 1999 accident. While Ms. Somogyi opined that Plaintiff was able to obtain employment in the range of $450 to $500 per week, the Commission adopted Dr. Sy's recommendation that vocational efforts should be limited to finding employment where Plaintiff can work at home. Defendant requested further one-time evaluations from licensed professional counselor, Dr. Lawrence Bergmann, and from gastroenterologist, Dr. Judd Adelman, which Plaintiff attended on 28 May and 3 October 2003 respectively. While Dr. Bergmann indicated that Plaintiff's symptoms were consistent with a person who had been exposed to traumatic events, he was not able to relate her depressive symptoms to the November 1999 accident, believed that she had not yet reached maximum medical improvement for psychological symptoms that developed after her work-related injury, and thought she could participate in a job search from a psychological standpoint. Dr. Adelman could not relate Plaintiff's incontinence to her work-related accident and felt that she could participate in vocational rehabilitation but also stated that he would defer to Dr. Cohen's opinion about what conditions resulted from Plaintiff's 1999 accident and whether her loss of bowel sensation was permanent. The Commission specifically found that greater weight was given to Dr. Sy's opinion that Plaintiff's incontinence was causally related to the November 1999 accident and to evidence that indicated Plaintiff's psychological problems were a proximate result of the same.

While the Commission found Plaintiff was and remains unable to work or earn wages in any capacity as a result of her 1999 accident from that date forward, it also found that Plaintiff unjustifiably refused to cooperate with vocational rehabilitation efforts beginning 5 July 2002. However, as of 23 April 2003, when Dr. Sy determined she was unable to work, Plaintiff was deemed justified in refusing vocational services, and the Commission found it proper to hold those rehabilitation efforts in abeyance until Plaintiff's physicians determine otherwise. Observing that Plaintiff had not requested Commission approval of medical treatment until 31 December 2002,

when she filed the Form 33 on that date, the Commission found the request was made within a reasonable time under the circumstances. Based on its finding that Plaintiff's full-time employment with Employer prior to her injury had extended over a period of less than fifty-two weeks prior, the Commission found that Plaintiff should be compensated for her loss of full-time wages. While the Commission concluded that Plaintiff sustained a 30% partial impairment to her spine as a result of her compensable work-related injury, her more munificent remedy was under N.C. Gen. Stat. § 97-29. The Commission concluded that Plaintiff was entitled to temporary total disability benefits at all times following her work-related injury other than for the period from 5 July 2002 through 23 April 2003, when her refusal to participate in vocational rehabilitation was no longer unjustified; that her average weekly wage of $501.44 yields a compensation rate of $344.30; and that Plaintiff's request for the Commission's approval for authorization of her medical care was done within a reasonable time after receiving treatment, entitling her to medical benefits commencing on 31 December 2002, the date she filed the Form 33 request for hearing, including psychological treatment, for her compensable injury by accident. Both parties timely appealed to this Court.

## Standard of Review

On appeal from the Full Commission's opinion and award, this Court's task is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). " 'The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (citation omitted). Thus, our "duty goes no further than to determine whether the record contains any evidence tending to support the finding[,]" and this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight." *Deese*, 352 N.C. at 115, 530 S.E.2d at 552 (internal quotation marks and citations omitted). As such, the Commission's findings of fact "are conclusive on appeal when supported by [any] competent evidence, even though there be evidence that would support findings to the contrary," *id.* at 115, 530 S.E.2d at 552-53 (internal quotation marks and citations omitted), and may be set aside only "when there is a complete lack of competent evidence to support them," *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). However, the Commission's conclusions of

law are reviewed de novo. *Ramsey v. Southern Indus. Constructors, Inc.*, 178 N.C. App. 25, 30, 630 S.E.2d 681, 685 (2006).

### Defendants' Appeal

On appeal, Defendants argue that the Commission erred in: (i) calculating Plaintiff's average weekly wage; (ii) ordering reinstatement of temporary total disability benefits as of 23 April 2003; and (iii) finding and concluding that Plaintiff sought Commission approval for her unauthorized medical treatment within a reasonable time.

### I.

[1] Defendants argue that the Commission erred in calculating Plaintiff's average weekly wage where there is no competent evidence that Plaintiff worked for Employer for less than fifty-two weeks prior to her 23 November 1999 injury.

An award of temporary total disability entitles the injured worker to weekly compensation equal to 66 ⅔% of his or her average weekly wages. *See* N.C. Gen. Stat. § 97-29 (2009); *see also Loch v. Entertainment Partners*, 148 N.C. App. 106, 111, 557 S.E.2d 182, 185 (2001) (noting that the average weekly wage is based on earning capacity and "is determined by calculating the amount which the injured employee would be earning were it not for the injury"). An employee's "average weekly wages" are computed pursuant to § 97-2(5), which sets forth, in preferential order, five methods by which such calculation may be made. *McAninch v. Buncombe County Schools*, 347 N.C. 126, 129, 489 S.E.2d 375, 377 (1997) (holding N.C. Gen. Stat. § 97-2(5) "sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed"). According to the statute:

> "Average weekly wages" shall mean [1] the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, including the subsistence allowance paid to veteran trainees by the United States government, provided the amount of said allowance shall be reported monthly by said trainee to his employer, divided by 52; [2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] Where the employment prior to the injury

extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

[5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5) (2009).

Here, finding of fact 36 sets forth the Commission's basis for resorting to the third method[1]:

36. Based upon the Form 22 submitted in this matter, along with the supplemental material provided by the defendants and plaintiff's responses thereto, the Full Commission finds that where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will thereby be obtained. The Full Commission finds that this method, more commonly known as "method [three]" is the appropriate means of determining Plaintiff's average weekly wage because Plaintiff's full-time employment with Defendant-employer was for less than fifty-two weeks prior to the injury. After her injury, Plaintiff has lost full-time wages (but not part-time wages) and, thus, should be compensated for her loss of full-time wages.

---

1. The opinion and award states in both this finding and the correlative conclusion of law that the Commission employed the method "commonly known as 'method two' " in computing Plaintiff's weekly wage; however, it is clear from its analysis and determination that "method three" was applied, and we adjust our review to reflect the Commission's intent.

Defendant argues that there is no competent evidence to support this finding of fact that Plaintiff's employment extended over a period of less than fifty-two weeks prior to the date of injury. While the undisputed evidence indeed establishes that Plaintiff's employment, in both her part-time and full-time capacities, did extend over a period of fifty-two weeks, competent evidence also shows that her full-time employment was the result of her promotion to a new, permanent position that was completely different from the first. The Commission's own finding 4, which is unchallenged on appeal, states that "Plaintiff began working for Defendant-Employer on November 18, 1997 on a part-time basis as a switchboard operator. She went to full-time work for Defendant-Employer as a Support Assistant I in the I/T Control Administration Section on April 26, 1999." Thus, this is not the case where the Commission is required to average an employee's part-time and full-time wages earned during the relevant period when the employee has done the same character of work at the same pay grade but, based on either the employee's availability or the employer's need, has worked a greater number of hours at times and a lesser number at others. *See, e.g., Mabry v. Bowers Implement Co.*, 48 N.C. App. 139, 144-45, 269 S.E.2d 165, 167-68 (1980) (holding Commission was required to average employee's eleven weeks of full-time employment with the forty-one weeks of part-time, where the employee held the same distributive education job and the same rate of pay at all times, relying on *Liles v. Electric Co.*, 244 N.C. 653, 94 S.E.2d 790 (1956), which "rejected as unfair and unjust a method which emphasized the worker's earnings during periods of full employment to the exclusion of consideration of the part time nature of the employment"). However, the more similar cases addressing the varying nature of the employee's work for the employer do not limit consideration of the duration of employment to the last position held. Thus, as discussed below, the Commission in this case did err in deeming Plaintiff's work for Employer to have spanned less than fifty-two weeks, as there was no competent evidence to support the finding.

The *Liles* Court distinguished several cases where the injured employee had been promoted separate from the part-time versus full-time inquiry:

> In *Munford v. Construction Co.*, 203 N.C. 247, 165 S.E. 696, decedent had been employed some three months at the time of his injury. The Commission had found as a fact that decedent's work "in the beginning of his employment . . . was not regular, but later he was assigned a truck and placed upon regular duty." Based

thereon, the Commission made a further unchallenged finding of fact that results fair and just to both parties would not be obtained by said second method; and this Court upheld an award based on the average weekly amount earned by a person of the same grade and character employed in the same class of employment, to wit, a full-time truck driver.

In *Mion v. Marble & Tile Co., Inc.*, 217 N.C. 743, 9 S.E.2d 501, 505, the decedent, who had worked less than fifty-two weeks prior to his injury, had twice received an increase in hourly pay. This Court held erroneous an award based on his average weekly wages during the last seven weeks of his employment, during which his compensation was greater than during the preceding portion of his period of employment. As stated *by Winborne, J.*, (now *C. J.*): "There is no finding that under the method provided as stated above (second method) for ascertaining the average weekly wage, the results here would be unfair to both parties, nor is there evidence tending to show such state of facts."

In *Early v. Basnight & Co.*, 214 N.C. 103, 198 S.E. 577, decedent, who had been a warehouse clerk for three years or thereabout, was promoted to the position of salesman some six months before his fatal accident. When injured his salary was $100.00 per month, or $23.07 per week, substantially more than he had earned as warehouse clerk. This Court held the evidence sufficient to support these findings by the Commission: "(4) That for exceptional reasons the average weekly wage of the plaintiff's deceased over the twelve months immediately preceding his injury and death would be unfair to the deceased employee and his dependents. (5) That the plaintiff's deceased would have been earning $23.07 per week if it had not been for the injury." It is noted that this statement appears in the opinion of the Commission: "The Full Commission has not taken into consideration the anticipated increase, but has given consideration to the actual increase that the deceased received from 1 January to 16 March." This Court held that the words, "the foregoing," in the second paragraph of G.S. s 97-2(e) referred *to the three methods* set out in the first paragraph thereof. *Winborne, J.* (now *C. J.*), speaking for this Court, said: "Hence, it is manifest that where exceptional reasons are found which make the computation on the basis of either of 'the foregoing' methods unfair to the employee, the legislature intended that the Industrial Commission might resort to such other method of computing the average

weekly wages *as would most nearly approximate the amount the injured employee would be earning if he were living.*" (Italics added.)

*Liles*, 244 N.C. at 659-60, 94 S.E.2d at 795.

We agree with Plaintiff that our Supreme Court's opinion in Early presents a situation most analogous to the case *sub judice*. The difference, however, which we believe to be fatal in this instance, is that the Commission in *Early* specifically found that-where the employee had been regularly employed in several capacities by the employer for three or four years, all in the warehouse besides the last six months; had been promoted to a salesman position approximately six months prior to the injury; and had received an average weekly wage of $20 in the warehouse and for three months following his promotion to the position of salesman, but his salary was then increased to $23.07 per week-"*[t]hat for exceptional reasons the average weekly wage of the plaintiff's deceased over the twelve months immediately preceding his injury and death would be unfair to the deceased employee and his dependents.*" *Early*, 214 N.C. at 105, 198 S.E. at 578. Our Supreme Court described the initial question presented on appeal as: whether the average weekly wages of an employee who "has been employed for the fifty-two weeks prior to the time of the injury which results in death, at wages the weekly average of which is definitely ascertainable by dividing the total by fifty-two" must be computed by the first, preferred method. *Id.* at 105-06, 198 S.E. at 578. While our Court answered in the negative, its formulation of the issue indicates that, notwithstanding the employee's promotion to a new position and pay raise, he had still been employed, as "employment" is defined, for a continuous fifty-two weeks. Accordingly, the Commission's finding that Plaintiff worked less than fifty-two weeks for Employer, triggering method three of the statute, was erroneous.

And while it would have been proper for the Commission to decline using method one, *notwithstanding Plaintiff's employment of over fifty-two weeks*, and calculate Plaintiff's average weekly wages as it did pursuant to method *five* for exceptional circumstances, such is permissible only in conjunction with a finding that the first four methods would be unfair, either to the employer or employee. The Commission did find that "results fair and just to both parties" would be obtained by applying the third method; however, this is not the same as finding that method one would be unfair. Therefore, we are constrained to reverse the Commission's calcula-

tion of Plaintiff's average weekly wage according only to her loss of full-time wages and remand for findings to support any recalculation that the Commission deems appropriate.

## II.

**[2]** Defendant argues that the Commission erred in ordering reinstatement of temporary total disability benefits as of 23 April 2003. Specifically, Defendant contends that there is no competent evidence supporting the Commission's finding of fact that Plaintiff's incontinence was causally related to the 23 November 1999 accident or its finding that Plaintiff's unjustified refusal to cooperate with medical treatment and vocational rehabilitation ended by 23 April 2003. However, where Dr. Sy's testimony constitutes sufficient competent evidence to support each of these findings, which support the Commission's respective conclusions that Plaintiff was and continues to be totally unable to earn wages in any employment since the date of her work-related injury and is entitled to a reinstatement of her temporary total disability benefits as of 23 April 2003 until further order by the Commission, we affirm.

## III.

**[3]** Defendants argue that the Commission erred in finding and concluding that Plaintiff sought Commission approval for her unauthorized treatment within a reasonable time. We disagree.

The Commission made the following findings related to Plaintiff's unapproved treatment and her delay in requesting authorization therefor, which Defendants challenge as unsupported by competent evidence:

33. Plaintiff suffered a serious injury to her spine on November 23, 1999, and she immediately began having neurological problems. Already being a paraplegic, she rightfully was concerned with obtaining the best medical treatment possible, particularly since Plaintiff had lived very independently prior to the accident of November 23, 1999. The physicians chosen by Defendants did not provide all the necessary medical treatment that was required to effectively treat Plaintiff's injury and provide the relief she needed, so she properly sought the best medical treatment she could find through a referral to Johns Hopkins Hospital and specifically to Dr. Cohen. Dr. Cohen is Harvard trained, he is a full-time professor at Johns Hopkins Medical School, and he teaches, treats patients, and does research.

. . . .

35. Plaintiff requested Industrial Commission approval of medical treatment as of December 31, 2002, which was within a reasonable time considering the circumstances. Defendants were timely aware of the treatment Plaintiff received and Plaintiff's request for them to authorize the same. Plaintiff had a serious injury that required major surgery and rehabilitation such that she had to move back in with her family in South Carolina, causing her a significant loss of independence. Plaintiff was dealing with her physical condition and relied upon her former attorney to represent her interests in her action before the Commission. Plaintiff's former attorney's delay in requesting authorization should not be imputed to Plaintiff.

Based on these findings, the Commission concluded that "Plaintiff's request for approval from the Commission for authorization for her medical care was done in a reasonable time after receiving the treatment, considering the circumstances of her case," entitling her "to medical benefits commencing on December 31, 2002, the date she filed the Form 33 request for hearing, including psychological treatment, for her compensable injury by accident of November 23, 1999.

Defendants first contend that the Commission's findings regarding Plaintiff's reasons for seeking unauthorized treatment and the Defendants' knowledge that Plaintiff was doing so are irrelevant to explain her delay. However, in *Ruggery v. N.C. Dep't of Corrections*, 135 N.C. App. 270, 520 S.E.2d 77 (1999), this Court addressed the reasonableness of the employee's request for medical authorization under the particularly relevant circumstance that the employer had notice of the treatment by physician's of the employee's own choosing:

There is no evidence in the present case that employer suffered from a lack of notice that employee was receiving treatment from physicians the employer did not authorize. The uncontroverted evidence is that employee did not return to the employer-approved physician, Dr. Siegel, but instead sought treatment from other physicians because Dr. Siegel refused to see employee. We do not believe that the legislature intended to shield employers from paying for medical expenses arising from work related injuries when the employer-approved physician has refused to treat the employee, forcing the employee to seek treatment from other physicians.

*Ruggery*, 135 N.C. App. at 277, 520 S.E.2d at 82. Moreover, Finding of Fact 33 clearly relates to the reasonableness of Plaintiff's choice to proceed with treatment despite the lack of approval therefor in light of the seriousness of her condition and sense of urgency related thereto. Finally, while there may be evidence to the contrary, Plaintiff's own testimony presents competent evidence that her former attorney was responsible for her delay in seeking Commission authorization. Defendants emphasize that Plaintiff was repeatedly advised that she would have to get approval if she wanted Defendants to ultimately pay for her unauthorized treatment, but Plaintiff did not dispute her knowledge of the requirement, stating, "My attorney made me aware that it was necessary to do that—for her to get it approved by the Commission." Such constitutes competent evidence that Plaintiff was relying on her former attorney to seek approval and supports the Commission's finding that the delay should not be attributed to Plaintiff. We conclude that those portions of Findings of Fact 33 and 35 challenged by Defendants are thus supported by competent evidence and, accordingly, support the Commission's conclusion that Plaintiff's ultimate request for authorization was done within a reasonable time after receiving treatment.

Plaintiff, however, also disputes Finding of Fact 35 to the extent that it finds she requested authorization only for medical treatment received on or after 31 December 2002.

### Plaintiff's Appeal

[4] Plaintiff cross-assigns as error the Commission's limitation of the medical care authorized to that received by Plaintiff on or after 31 December 2002. We agree.

Where we have affirmed the Commission's conclusion that Plaintiff's request for approval of her medical treatment was done within "a reasonable time *after receiving the treatment*," Finding of Fact 35 and other findings related to Plaintiff's unauthorized treatment unfailingly lead to the conclusion that Plaintiff's treatment *prior* to the date she filed the request was authorized.

While an employee's "authorized treating physician" is generally selected by the employer," if a workers' compensation claimant prefers, he may select, subject to Industrial Commission's approval and authorization, a new treating physician. *Schofield v. Tea Co.*, 299 N.C. 582, 264 S.E.2d 56 (1980). As discussed above, the Commission's approval and authorization need not be obtained prior to seeking ser-

vices of a new treating physician but, rather, within a reasonable time after claimant has selected a new physician. Thus, where the claimant *"seeks retroactive authorization* of a new treating physician, the Commission 'must make findings relative to whether such approval was sought . . . within a reasonable time.' " *Jenkins v. Public Service Co. of N.C.*, 134 N.C. App. 405, 411, 518 S.E.2d 6, 12 (1999) (quoting *Schofield*, 299 N.C. at 586-87, 264 S.E.2d at 60) (emphasis added). Our Supreme Court has further required that, upon submission of a claim for approval for medical treatment rendered by employee's own physician, there must be findings based upon competent evidence that the treatment was required to effect a cure or give relief, or where additional time is involved, that it has tended to lessen the period of disability and that condition treated is, or was, caused by, or was otherwise traceable to or related to injury giving rise to compensable claim.

In addition to Findings of Fact 33 and 35, the Commission found, in unchallenged Finding of Fact 34, that

> Dr. Cohen's treatment of Plaintiff, including the surgical procedure and all follow-up treatment, was directly related to her November 23, 1999 injury. Dr. Cohen noted objective evidence of the injury that required surgery, and the surgery was performed to remove the compression that was present on the spinal cord and to stabilize Plaintiff's spine to get the bones to heal together, so that she would not have any further progression of her kyphosis, any further worsening of her neurologic function, and to possibly aid in the recovery of some of her lost functioning. After the surgery, Plaintiff's pain was diminished, and she recovered part of her motor function. Dr. Cohen's treatment of the Plaintiff was necessary to effect a cure, provide relief and/or lessen Plaintiff's period of disability.

Where findings of this nature are required only when an employee is seeking approval for medical treatment already received, it defies logic that the Commission would limit its authorization to Plaintiff's prospective treatment from the date of her request forward. Moreover, the Commission's findings specifically validate Dr. Cohen's treatment of Plaintiff, which began on 23 March 2000, emphasizing the surgery he performed on 17 June 2000 and the follow-up visits, totally at least four as of March 2002. Thus, it is inexplicable that the Commission would-in light of the findings which tend to authorize Plaintiff's prior treatment, as the finding that her request was made

within a reasonable time did not limit the reasonableness thereof to treatment by any certain physician or any certain procedure over another-limit the reimbursement for Plaintiff's medical care to that obtained after 31 December 2002. Where the findings simply do not support this aspect of the Commission's conclusion, we reverse and remand.

Affirmed in part; Reversed in part and Remanded.

Judges CALABRIA and STEELMAN concur.