MARIA C. BONEY, WIDOW OF LLOYD W. BONEY, DECEASED, EMPLOYEE, PLAINTIFF-APPELLANT v. WINN DIXIE, INC., EMPLOYER, SELF-INSURED (SEDGWICK OF THE CAROLINAS, SERVICING AGENT), DEFENDANTS-APPELLEES

No. COA02-1444

(Filed 16 March 2004)

**Workers' Compensation— average weekly wage—intermittent, part-time worker**

A workers' compensation case was remanded to the Industrial Commission for appropriate findings and the recalculation of the average weekly wage of an 81-year-old man who was retired but worked part time as needed as a fruit and vegetable inspector. The Commission did not clearly state the method it used to calculate his average weekly wage.

Appeal by plaintiff from an opinion and award entered 12 August 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 August 2003.

*Mark T. Sumwalt, P.A., by Mark T. Sumwalt and Vernon Sumwalt, for plaintiff-appellant.*

*Morris York Williams Surles & Barringer, LLP, by Amy Kushner, for defendants-appellees.*

McGEE, Judge.

The Industrial Commission (Commission) entered an opinion and award on 12 August 2002 awarding compensation to Maria C. Boney (plaintiff), widow of Lloyd W. Boney (decedent), in the amount of $129.93 per week for 400 weeks, as well as payments for medical treatment arising from the compensable injury decedent suffered while employed by Winn Dixie, Inc. (employer), burial expenses for decedent, and costs, including attorneys' fees. Plaintiff appeals the Commission's opinion and award determining decedent's average weekly wage and the resulting compensation rate.

The Commission found as fact and concluded as a matter of law that decedent suffered a compensable injury on 21 August 1998 when he fell while working for employer. As a consequence of that fall, decedent suffered blunt trauma, resulting ultimately in decedent's death on 24 August 1998. The Commission also made the following pertinent findings of fact:

**BONEY v. WINN-DIXIE, INC.**

[163 N.C. App. 330 (2004)]

1. On August 21, 1998 decedent, who was eighty-one (81) years old, was employed by defendant on a part-time basis as a fruit and vegetable inspector. Decedent had previously worked for defendant in that capacity on a full-time basis until he retired in 1988. After decedent's retirement, he would fill in for vacationing or absent employees working some days every month resulting in a fluctuating work schedule.

. . .

17. Decedent's average weekly wage calculated by the Industrial Commission pursuant to the Form 22 *Statement of Days Worked and Earnings of Injured Employee* that is a part of the evidentiary record in this matter is $194.88 resulting in a weekly compensation rate of $129.93.

Based upon its findings of fact, the Commission made the following pertinent conclusion of law:

4. Decedent was engaged in part-time employment. A part-time job or intermittent part-time job shall not be converted to a full-time or continuous job when calculating the average weekly wage. *Joyner v. A.J. Carey Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966). Consequently, decedent's average weekly wage of $194.88 yields a weekly compensation rate of $129.93 payable to decedent's only dependent, Maria Boney, for four hundred (400) weeks beginning August 24, 1998. N.C.G.S. §§ 97-2(5), 97-38.

Plaintiff argues the Commission erred in its determination of decedent's average weekly wage and the resulting compensation rate. For the reasons discussed below, we agree and must remand the case for recalculation of decedent's average weekly wage and the resulting compensation rate.

This Court's review of an opinion and award of the Commission is limited to a determination of whether the findings of fact are supported by competent evidence and whether the conclusions of law are supported by the findings of fact. *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980). However, we review *de novo* the conclusions of law of the Commission. *Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 127, 532 S.E.2d 583, 585 (2000). "The determination of the plaintiff's 'average weekly wages' requires application of the definition set forth in the Workers' Compensation Act, [N.C. Gen.

Stat. § 97-2(5) (2001)], and the case law construing that statute and thus raises an issue of law, not fact." *Swain v. C & N Evans Trucking Co.*, 126 N.C. App. 332, 335-36, 484 S.E.2d 845, 848 (1997).

N.C.G.S. § 97-2(5) provides in pertinent part:

[1] "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52; [2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

[5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

This statute provides a hierarchy of the methods for computing the average weekly wage of an injured employee, with the primary method being the first option listed; the fifth option is only used when use of the other methods would create results not "unjust results." *McAninch v. Buncombe County Schools*, 347 N.C. 126, 129-30, 489 S.E.2d 375, 377-78 (1997); *Abernathy v. Sandoz Chems./Clariant Corp.*, 151 N.C. App. 252, 258, 565 S.E.2d 218, 222, *cert. denied*, 356 N.C. 432, 572 S.E.2d 421 (2002). In fact, the fifth, catchall provision may not be used by the Commission "unless there has been a finding

that unjust results would occur by using the previously enumerated methods." *McAninch*, 347 N.C. at 130, 489 S.E.2d at 378. Whether the results of calculating the average weekly wage by the applicable enumerated method would be unfair to either employer or employee is a question of fact, and the Commission's determination on this issue would control, unless there was no competent evidence in the record to support the determination. *Id.*

In the present case the Commission did not clearly state what method it used to calculate decedent's average weekly wage. We must therefore remand to the Commission for recalculation of decedent's average weekly wage. *Barber v. Going West Transp., Inc.*, 134 N.C. App. 428, 437, 517 S.E.2d 914, 921 (1999) (remand to the Commission where there were no findings indicating how the average weekly wage was derived). We note, in examining the record, that it appears the Commission used the first method listed in N.C.G.S. § 97-2(5), dividing decedent's gross income of $10,133.98 during the 52 week period prior to his injury by 52 weeks, equaling $194.88. Since the Commission made no findings regarding the "fair and just" method for calculating decedent's average weekly wage, it could not have been operating under the fifth method for determining average weekly wage for decedent. *Clark v. ITT Grinnell Ind. Piping, Inc.*, 141 N.C. App. 417, 435, 539 S.E.2d 369, 379-80 (2000), *remanded for reconsideration on other grounds*, 354 N.C. 572, 558 S.E.2d 867 (2001) ("Without any findings regarding the 'fair and just' method for calculating plaintiff's average weekly wage, we must assume that the Commission was attempting to rely upon the first method set forth in N.C.G.S. § 97-2(5)."). The Commission found as fact that decedent "was employed by defendant on a part-time basis" and that "he would fill in for vacationing or absent employees working some days every month resulting in a fluctuating work schedule." In other cases dealing with part-time or intermittent employees our Courts have found that the first method of calculating average weekly wage was inappropriate. *See Joyner v. Oil Co.*, 266 N.C. 519, 522-23, 146 S.E.2d 447, 450 (1966); *Liles v. Electric Co.*, 244 N.C. 653, 659-60, 94 S.E.2d 790, 795-96 (1956); *see also Bond*, 139 N.C. App. at 129, 532 S.E.2d at 587; *Postell v. B&D Construction Co.*, 105 N.C. App. 1, 4-7, 411 S.E.2d 413, 415-17, *disc. review denied*, 331 N.C. 286, 417 S.E.2d 253 (1992). Therefore, if in fact the Commission used the first method to calculate decedent's average weekly wage, it erred in doing so.

Plaintiff argues the Commission should have calculated decedent's average weekly wage using the second method in N.C.G.S. § 97-2(5), ("but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted"). Plaintiff specifically argues that according to decedent's Form 22, there were numerous seven day periods in which decedent did not work for employer during the 52 weeks preceding decedent's injury. In fact, plaintiff contends that the Commission must use the second method in determining decedent's average weekly wage and is prohibited from using the fifth method of calculation. However, as stated in *Joyner*, the calculation of an injured employee's average weekly wage, when that employee is a part-time or intermittent employee, should not convert the job into full-time or continuous employment. *Joyner*, 266 N.C. at 523, 146 S.E.2d at 450 (citing *Liles*, 244 N.C. 653, 94 S.E.2d 790). As stated above, if one of the four enumerated methods in N.C.G.S. § 97-2(5) is appropriate to calculate the injured employee's average weekly wage and the Commission does not make a finding that the result is unjust, that method must be used. *McAninch*, 347 N.C. at 130, 489 S.E.2d at 378. However, where the Commission makes a finding that the result of using such a method would be unjust, and that finding is supported by the evidence, the Commission may calculate the average weekly wage under the fifth method in N.C.G.S. § 97-2(5). *Id.* When using the fifth method the Commission is to calculate the average weekly wage "as will most nearly approximate the amount which [decedent] *would be earning* were it not for the injury[.]" *Liles*, 244 N.C. at 660, 94 S.E.2d at 796.

We hold that if the Commission finds that the calculation of decedent's average weekly wage by use of the second method in N.C.G.S. § 97-2(5) would create an unfair result since the Commission found as fact that decedent was a part-time employee, the Commission may use an appropriate method to calculate decedent's average weekly wage "as will most nearly approximate the amount which [decedent] *would be earning* were it not for the injury" under the fifth method in N.C.G.S. § 97-2(5). *Liles*, 244 N.C. at 660, 94 S.E.2d at 796.

The Commission's award does not contain findings indicating its consideration of the methods for computing the average weekly wage. We therefore remand this case to the Commission for recalcu-

lation of decedent's average weekly wage and appropriate findings of fact to support that recalculation consistent with this opinion.

Reversed and remanded.

Judges BRYANT and GEER concur.