ZACHARY, Judge.
Verona Jacobs-Sams (plaintiff) appeals from an Opinion and Award of the North Carolina Industrial Commission denying her claim for workers' compensation benefits. After careful review, we conclude that the Commission's findings of fact were supported by competent evidence, those findings supported the Commission's conclusions of law, and the opinion of the Industrial Commission should be affirmed.
Background
On the morning of 3 December 2013, plaintiff arrived at her place of employment at the Duke Cancer Institute Development Office ("Duke"), located on West Main Street in Durham, North Carolina ("the Building").
Plaintiff worked on the first floor of the Building, which had a basement below and a second floor above. The basement was being renovated, and on 2 December 2013 until early the next morning, the basement's floors were painted with an epoxy paint. The floors were painted during the night because epoxy paint possesses an extremely strong odor, even in small quantities.
Although several measures had been taken to prevent the paint fumes from spreading from the basement to the occupied first and second floors of the Building, on 2 December 2013 a construction crew member inadvertently left open the stairwell door to the second floor. This allowed the paint fumes to leak out and recirculate throughout the first and second floors. The mistake was discovered about an hour and a half after plaintiff arrived at work.
Plaintiff noticed a strong odor as she walked into the Building. Almost immediately plaintiff began experiencing headaches, nausea, numbness in her lips, and lightheadedness. About three hours later, Duke's Human Resources Department advised employees working in the Building that they could leave for the day. Plaintiff continued to experience mild nausea and lightheadedness after she left work. Plaintiff returned the next morning, on 4 December 2013, but found that the odor remained in the office and that her symptoms, which had subsided overnight, immediately returned. Plaintiff left work shortly after arriving on 4 December 2013.
The painting continued during the night of 4 December 2013. Plaintiff arrived at work the morning of 5 December 2013 and noted that the odors "were still present, but they were better." After working for about four hours on 5 December 2013, and experiencing head pressure, nausea, and eye irritation, plaintiff visited an urgent care center. The urgent care physician advised plaintiff to stay home for a few days. Plaintiff returned to work on 7 December 2013.
Plaintiff continued to work for the next several weeks, but her symptoms persisted. Plaintiff developed breathing problems, so severe that on one occasion she visited an emergency department. On 17 January 2014, plaintiff visited Dr. Snapper, a Duke pulmonologist, who ordered her out of work for two weeks. Upon return to work, Duke relocated plaintiff to two other buildings; however, plaintiff's symptoms continued.
Plaintiff was last employed by Duke on 27 May 2014. Plaintiff has had to make substantial lifestyle changes-including staying at home as much as possible-in order to avoid recurring episodes of her symptoms due to the chemical sensitivity from which she now suffers. Plaintiff maintains that she can no longer work in any building other than her own home.
On 21 March 2014, plaintiff submitted Industrial Commission Form 18 "Notice of Accident To Employer," after which Duke submitted Form 19 "Employer's Report of Employee's Injury." Duke denied plaintiff's claim in Form 61 on 10 April 2014. Plaintiff filed Industrial Commission Form 33 "Request that Claim be Assigned for Hearing" on 8 July 2014. Deputy Commissioner Brad Donovan heard this matter on 4 December 2014 and filed an Opinion and Award denying plaintiff's claim on 23 September 2015. Plaintiff appealed to the Full Commission for review of Deputy Commissioner Donovan's opinion.
On 9 December 2016, the Full Commission denied plaintiff's claim, concluding that she had "failed to demonstrate by the preponderance of the expert medical testimony that she suffered an injury as a result of her exposure to noxious fumes in her workplace[.]" Plaintiff timely appealed.
Standard of Review
On appeal from an Opinion and Award of the Industrial Commission, our review is limited to assessing "whether there is any competent evidence in the record to support the Commission's findings and whether those findings support the Commission's conclusions of law." Faison v. Allen Canning Co., 163 N.C. App. 755, 757, 594 S.E.2d 446, 448 (2004) (citation omitted). The " 'Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony.' " Adams v. AVX Corp., 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting Anderson v. Lincoln Constr. Co., 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965) ). "Contradictions in the testimony go to its weight, and the Commission may properly refuse to believe particular evidence." Harrell v. J.P. Stevens & Co., 45 N.C. App. 197, 205, 262 S.E.2d 830, 835 (1980). Where there exists any competent evidence to support the Commission's findings, those findings are binding on appeal, even where the record contains evidence which would support a finding to the contrary. Faison, 163 N.C. App. at 757, 594 S.E.2d at 448. The Commission's conclusions of law, however, are reviewed de novo. Boney v. Winn Dixie, Inc., 163 N.C. App. 330, 331, 593 S.E.2d 93, 95 (2004).
Discussion
For an injury to be compensable under the Workers' Compensation Act, "it must be ... the result of an 'accident arising out of and in the course of the employment[.]' " Booker v. Duke Medical Center, 297 N.C. 458, 465, 256 S.E.2d 189, 194 (1979) ; N.C. Gen. Stat. § 97-2(6) (2013). An injury will be compensable as an "injury by accident" where the claimant proves " '(1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment [.]' " McAdams v. Safety Kleen Sys., 218 N.C. App. 166, 169, 720 S.E.2d 896, 899 (2012) (quoting Hollar v. Furniture Co., 48 N.C. App. 489, 490, 269 S.E.2d 667, 669 (1980) ). An "accident" is an injury that arises "from a definite event, the time and place of which can be fixed[.]" Henry v. A.C.Lawrence Leather Co., 234 N.C. 126, 131, 66 S.E.2d 693, 696 (1951) ; N.C. Gen. Stat. § 97-52 (2013).
Likewise, an "occupational disease" may be compensable "as the happening of an injury by accident" pursuant to N.C. Gen. Stat. § 97-52 and § 97-53(13) where "the employment exposed the worker to a greater risk of contracting the disease than the public generally." Rutledge v. Tultex Corp./Kings Yarn, 308 N.C. 85, 94, 301 S.E.2d 359, 365 (1983). There must also "be 'a causal connection between the disease and the claimant's employment.' " Rutledge, 308 N.C. at 93, 301 S.E.2d at 365 (quoting Hansel v. Sherman Textiles, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981) ) (alteration omitted).
In the instant case, the Full Commission treated plaintiff's claim as alleging an "injury by accident" under the Workers' Compensation Act, and considered the pertinent "accident" to be plaintiff's exposure to the paint fumes on 3 December 2013. Upon review of the evidence, the Commission concluded that plaintiff failed to establish "that she suffered an injury as a result of her exposure," and therefore had not shown a causal relation between the accident and her symptoms. The Commission also considered whether plaintiff had established that she suffered from a compensable occupational disease. However, the Commission determined that plaintiff had "failed to demonstrate a causal connection between any occupational disease and her employment[.]" In addition, the Commission determined that plaintiff failed to demonstrate "that her employment placed her at an increased risk of developing any occupational disease." Accordingly, the Commission concluded that plaintiff "failed to meet her burden of proving that she contracted an occupational disease as a result of her exposure to fumes in her office beginning 3 December 2013."
On appeal, plaintiff challenges only the Full Commission's conclusion that plaintiff failed to "prove that she had suffered a compensable injury as a result of exposure to noxious fumes in her workplace on or after December 3, 2013." Therefore, our analysis focuses on causation.
I. Law Applied by the Commission
Plaintiff argues that the Commission misapprehended the law in that it required plaintiff to prove both (1) the precise chemical substance or substances in the air on 3 December 2013, and (2) the concentration of those substances in the air on 3 December 2013. We disagree, and conclude that the Commission's decision was not based upon plaintiff's failure to produce precise scientific data in support of her claim.
Plaintiff correctly notes that a claimant is not required to prove the amount of toxic substances in the air in order to prevail on a toxic exposure claim. See Vaughn v. Insulating Servs., 165 N.C. App. 469, 473, 598 S.E.2d 629, 632 (2004). While the cases that address this point were decided in the occupational disease context, we find them persuasive in the context of an injury by accident. We conclude that it would be " 'unreasonable to assume that the legislature intended an employee to bear the burden of making toxicity measurements during his employment in order to lay the groundwork for a worker's compensation claim' " regardless of whether that claim is treated as an injury by accident or as an occupational disease. Austin v. Continental General Tire, 141 N.C. App. 397, 404, 540 S.E.2d 824, 829 (2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001), (citation and alteration omitted). Such a requirement "would make it virtually impossible for an employee to successfully bring suit for compensation due to the difficulty he would encounter in attempting to make measurements of toxic airborne substances on his employer's premises." Vaughn., 165 N.C. App. at 473, 598 S.E.2d at 632 (citations and alteration omitted).
However, while a plaintiff is not faced with the burden of establishing exact toxicity levels, a plaintiff nevertheless maintains the burden of proving her claim by a preponderance of the evidence. Id. It remains true that a "plaintiff must present credible evidence of exposure sufficient to prove that [she] was ... injuriously exposed while working for the defendant-employer." Id. And, although a plaintiff is not required to produce evidence of precise toxicity measurements, nothing prevents the Commission from considering an employer's evidence of the amount of a toxin to which the claimant was exposed in determining causation. Id.
Our review of the Commission's Opinion and Award fails to reveal any indication that the Commission required plaintiff to prove the identity or amount of toxic substances in the air on 3 December 2013. Plaintiff has challenged the Commission's findings that make reference to two sets of xylene exposure calculations that were produced by different experts. Those calculations were proffered in order to accurately account for the conditions in the Building at the time of plaintiff's exposure. However, the Commission's consideration of calculations of plaintiff's potential xylene exposure as part of the evidence does not constitute the imposition of a requirement that plaintiff affirmatively establish her precise exposure level. See Vaughn, 165 N.C. App. at 473, 598 S.E.2d at 632 (although employees do not bear the burden of making toxicity measurements, "[t]his does not mean ... that the Commission cannot consider expert [toxicity] testimony, or the lack thereof ... in weighing the evidence and determining whether claimant has met his burden of proof[ ]"). Similarly, the Commission's acceptance of the testimony that xylene was the likely chemical culprit in the epoxy paint does not constitute a requirement that plaintiff establish otherwise. Rather, the Commission simply found that, considering all of the evidence presented, plaintiff had failed to meet her burden of proving causation by a preponderance of the evidence. The Commission was free to assign to the conflicting testimony whatever weight it felt appropriate, and the weight that the Commission afforded to that testimony is not for this Court to pass upon. Russell v. Lowe's Prod. Distrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
II. Causation
Next, plaintiff challenges the evidentiary support for many of the Commission's findings and the support for the Commission's ultimate conclusion that those findings failed to establish that plaintiff suffered a compensable injury as a result of her exposure to paint fumes in her workplace. We conclude that plaintiff's arguments lack merit. The record contains competent evidence in support of the Commission's findings, and those findings support the Commission's conclusion that plaintiff had failed to prove that her exposure to epoxy paint fumes caused her alleged injuries.
Causation must be proven by a preponderance of the evidence. Holley v. ACTS Inc., 357 N.C. 228, 232, 581 S.E.2d 750, 752 (2003). Where the claim involves complicated medical questions, "only an expert can give competent opinion evidence as to the cause of the injury." Click v. Pilot Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (citations omitted). Our inquiry is limited to determining whether there is any competent evidence supporting the Commission's findings and whether those findings support the Commission's conclusions of law. Faison, 163 N.C. App. at 757, 594 S.E.2d at 448.
First, plaintiff challenges the Commission's finding that xylene was most likely the chemical to which she reacted on 3 December 2013. Plaintiff argues that this finding is not supported by any evidence. However, there was expert testimony that xylene makes up a significant portion of epoxy paint. The expert opined that, based on its high vapor pressure, xylene is more volatile, and thus more likely to have been present in the air than the paint's other chemical components. The Commission made note of another expert's conflicting opinion that there may have been additional toxic chemicals in the paint. However, because the expert was unable to identify what those other chemicals might have been, the Commission assigned less weight to that opinion. With our review limited to whether there is any competent evidence in the record to support the Commission's findings of fact, we conclude that competent evidence exists to support the Commission's finding that xylene was the most likely chemical culprit on 3 December 2013.
Plaintiff also challenges various findings of fact regarding the readings that were taken by Duke personnel in an effort to estimate the level of xylene present in the Building on the morning of 3 December 2013. Plaintiff argues that the Commission failed to take into account the fact that forty-eight hours had elapsed from the time of the initial exposure to the time that the readings were taken. However, the Opinion and Award specifically notes that the measurements were conducted on 5 December 2013 after remedial measures had been taken. Likewise, while the experts gave differing opinions as to the likely presence of xylene on 3 December 2013, it was not error for the Commission to assign more weight to certain opinions over others.
Finally, plaintiff challenges several findings of fact related to the expert medical testimony. The Commission concluded that "[p]laintiff's medical records, from many treatment dates and from many different providers with diverse specialties fail to show physical findings on examination to support [p]laintiff's claimed injury."
Five different physicians rendered expert opinions as to the cause of plaintiff's sensitivities. While one of the five doctors concluded that plaintiff's exposure to xylene likely caused her condition, the Commission noted that the others testified to the contrary. The common opinion among the doctors who did not conclude that plaintiff's symptoms were caused by xylene fumes was that there was not sufficient evidence to link plaintiff's respiratory sensitivities to her exposure to the epoxy paint fumes in the Building. One doctor testified that "Xylene is not a sensitizing agent. Xylene does not cause occupational asthma, no matter how much of it you're exposed to, no matter how long you're exposed to it." Another doctor testified that plaintiff "tended to magnify issues regarding her health[,]" and that plaintiff's exposure to the paint fumes "was anxiety producing for her and that she ought to get some help with that." Other physicians had similar concerns about the role that plaintiff's anxiety played in the presentation of her symptoms. Likewise, one of plaintiff's medical reports from 20 December 2013 noted that "She continues to report upper respiratory symptoms that are consistent with an upper respiratory irritation.... Although I was unable to substantiate [plaintiff's] symptoms with findings on physical exam." That report was explained as meaning "basically that although ... [plaintiff] continues to report upper respiratory irritation or at least symptoms that could be consistent with irritation, just that there's no findings to go along with that." Accordingly, we conclude that there is competent evidence to support the Commission's findings, and that those findings support the conclusion that plaintiff failed to demonstrate, by a preponderance of the evidence, that she suffered an injury as a result of her exposure to paint fumes in her workplace.
The question before us is not whether plaintiff offered evidence from which the Commission might have found that she had proven causation, but, rather, whether any competent evidence was presented which could support the Commission's conclusion that plaintiff had failed to prove causation. Because the Full Commission's findings are supported by competent evidence, and because the Commission did not misapprehend the law in applying those findings, its conclusion that plaintiff failed to demonstrate by a preponderance of the evidence that she suffered an injury as a result of her exposure to noxious fumes was not in error.
Conclusion
For the aforementioned reasons, we hold that the final Opinion and Award of the Full Commission is, in all respects,
AFFIRMED.
Report per Rule 30(e).
Judges CALABRIA and MURPHY concur.