IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-262

Filed: 18 August 2020

North Carolina Industrial Commission, I.C. No. 16-002725

LUON NAY, Employee, Plaintiff,

v.

CORNERSTONE STAFFING SOLUTIONS, Employer, and STARNET INSURANCE COMPANY, Carrier (KEY RISK MANAGEMENT SERVICES, Administrator), Defendants.

Appeal by Plaintiff from an Opinion and Award filed 22 February 2019 by the Full North Carolina Industrial Commission. Heard in the Court of Appeals 2 October 2019.

> *Kathleen G. Sumner, David P. Stewart, and Jay A. Gervasi, Jr. for plaintiff-appellant.*
>
> *Joy H. Brewer for defendants-appellees.*
>
> *Lennon, Camak & Bertics, PLLC, by Michael W. Bertics, and Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson, for North Carolina Advocates for Justice, amicus curiae.*

MURPHY, Judge.

Where the application of Method 3 of N.C.G.S. § 97-2(5) to calculate a plaintiff's average weekly wages would produce fair results for both an employee and an employer, the Full Commission errs in applying Method 5 to calculate a plaintiff's average weekly wages.

**BACKGROUND**

Plaintiff Luon Nay ("Nay") worked as an employee of Defendant Cornerstone Staffing Solutions ("Cornerstone"), which is an employment staffing agency. A significant percentage of Cornerstone's employees seek work placement with companies that offer the possibility of "full-time, long-term employment with the idea of going permanent at that client company." In the staffing industry, these positions are called "temp-to-perm." Thomas Chandler, the owner, founder, and CEO of Cornerstone, estimated at least 95% of the positions filled by Cornerstone are temp-to-perm positions.

Nay began working for Cornerstone on 25 August 2015. On 24 November 2015, Nay injured his back while performing work in a placement with FieldBuilders as an employee of Cornerstone. After the 24 November 2015 injury, Nay returned to work and obtained a placement with another company for approximately three weeks in June and July of 2016 as an employee of Cornerstone. On 21 July 2017, Nay filed a Form 33 hearing request, alleging disagreement over the unilateral modification of Nay's Temporary Total Disability ("TTD") benefits by Cornerstone and Starnet Insurance Company, Carrier (Key Risk Management Services, Administrator) (collectively "Defendants"). Defendants filed a Form 33R, contending Nay had been provided with all benefits to which he was due under the Workers' Compensation Act. Nay earned $5,805.25 from Cornerstone during his time as Cornerstone's employee prior to his injury. Following a hearing, the Deputy Commissioner filed an Opinion

and Award on 7 June 2018. In relevant part, the Deputy Commissioner concluded Nay's average weekly wages should be calculated pursuant to Method 5 of N.C.G.S. § 97-2(5) by dividing Nay's gross wages from Cornerstone of $5,805.25 by 52 weeks, yielding average weekly wages of $111.64 and a compensation rate of $74.43.

N.C.G.S. § 97-2(5) calculates an injured worker's average weekly wages according to the following 5 method hierarchical approach:

> [Method 1:] 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which the employee was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52;
>
> [Method 2:] [I]f the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.
>
> [Method 3:] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained.
>
> [Method 4:] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the

same locality or community.

[Method 5:] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C.G.S. § 97-2(5) (2019) (paragraph spacing added for ease of reading).

Nay appealed to the Full Commission ("the Commission") and argued that his average weekly wages should be calculated according to Method 3, not Method 5. The parties stipulated to the following in the Commission's 22 February 2019 Opinion and Award:

1. The parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction over this matter.

2. That all parties have been correctly designated, and there are no questions as to misjoinder or non-misjoinder of parties.

3. [Cornerstone] employs greater than three full time employees and is therefore subject to the Act.

4. An employment relationship existed between [Nay] and [Cornerstone] at the time of [Nay's] injury.

5. Insurance coverage existed on [the] date of injury.

6. [Nay] sustained a compensable injury to his low back on [24 November 2015] while loading equipment and filed a Form 18 on [8 March 2016].

7. Defendants filed a Form 63 on [25 March 2016] and

began directing medical care and paying temporary total disability benefits to [Nay].

8.     [Nay] contends his average weekly wage is $419.20, yielding a compensation rate of $279.48.

9.     Defendants contend [Nay's] average weekly wage is $111.64, yielding a compensation rate of $74.43.

10.     [Nay] was paid compensation consisting of $258.03 in weekly TTD benefits from [1 December 2015] to [5 July 2016].

11.     Defendants filed a Form 62 on [19 December 2016] and [7 July 2017] modifying [Nay's] average weekly wage to $111.64, yielding a compensation rate of $74.43.

12.     [Nay] has received compensation consisting of $74.43 in weekly TTD benefits beginning [21 June 2017] to the present and ongoing.

The following findings of fact are unchallenged on appeal:

1.     This matter arises out of an admittedly compensable [24 November 2015] injury by accident resulting in injury to [Nay's] lower back.

2.     [Nay] began working for [Cornerstone], a staffing agency, on [25 August 2015].

3.     At the time of his compensable [24 November 2015] injury by accident, [Nay] was working on assignment performing landscaping work with FieldBuilders. [Nay's] assignment with FieldBuilders involved cutting grass, patch/repair work, and general landscaping tasks. He generally worked from 7:00 a.m. through 4:00 p.m. for a total of eight hours per day. However, he also would occasionally work as few as 6 hours and as many as 9-10 hours in a given day. [Nay] worked 4-5 days per week, on average, and earned $11.00 per hour.

. . .

> 5.    On [21 June 2017, Nay] was written out of work due to his compensable back injury.  [Nay] has remained out of work since [21 June 2017] and continues to receive [TTD] benefits.

> 6.    In controversy is the correct calculation of [Nay's] average weekly wage.  [Nay] contends his average weekly wage is $419.70, yielding a weekly compensation rate of $279.48.  Defendants contend [Nay's] average weekly wage is $111.64, yielding a weekly compensation rate of $74.63.

> 7.    Defendants initially paid [Nay] a compensation rate of $258.03, based upon an average weekly wage of $387.02. Defendants based [Nay's] initial average weekly wage on a Form 22 *Statement of Days Worked and Earnings of Employee* which reflected [Nay's] earnings of $5,805.25 over 15 weeks between [25 August 2015] through [7 December 2015].  On [19 December 2016] and [7 July 2017], Defendants filed a Form 62 *Notice of Reinstatement of Modification of Compensation* modifying [Nay's] average weekly wage from $387.02 to $111.64 and modified [Nay's] weekly [TTD] payments to $74.43 on [21 June 2017].

"Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal."  *Allred v. Exceptional Landscapes, Inc.*, 227 N.C. App. 229, 232, 743 S.E.2d 48, 51 (2013) (citing *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118 (2003)).

On 22 February 2019, the Commission filed its Opinion and Award concluding: Nay's average weekly wages cannot be calculated via Method 1 or Method 2 of N.C.G.S. § 97-2(5); calculation of Nay's average weekly wages via Method 3 does not

yield results that are fair and just to both parties; Nay's average weekly wages cannot be calculated pursuant to Method 4; exceptional reasons exist in this case, so Nay's average weekly wages should be calculated based upon Method 5, concluding this is the only method which would accurately reflect Nay's expected earnings but for his work injury; using Method 5 produces results that are fair and just to both parties; and Nay's average weekly wages should be calculated pursuant to Method 5 by dividing Nay's gross wages of $5,805.25 by 52 weeks, which yields average weekly wages of $111.64 and a compensation rate of $74.43.

Nay filed Notice of Appeal to this Court on 27 February 2019.

## ANALYSIS

The sole disputed issue on appeal is whether the Commission erred in calculating the average weekly wages according to Method 5, or whether Method 3 should have been used in calculating Nay's average weekly wages pursuant to N.C.G.S. § 97-2(5). *See* N.C. R. App. P. 28(b)(6) (2019).

On appeal, Nay challenges Findings of Fact 4 and 8 through 17. For the purposes of this appeal, we focus on two relevant challenged findings of fact—Findings of Fact 13 and 15.

> 13. Use of [Method 3] in this claim would produce an inflated *average weekly wage that is not fair* to Defendants because [Nay] was employed in a temporary capacity with no guarantee of permanent employment, length of a particular assignment, or specific wage rate, and he was assigned to a client account whose work was seasonal.

Thus, [Method 3] would not take into account that [Nay] was on a temporary assignment that in all likelihood would not have approached 52 weeks in duration.

. . .

15.    The [Commission] finds that exceptional reasons exist, and [Nay's] average weekly wage should be calculated pursuant to [Method 5]. . . . Thus, [Nay's] total earnings of $5,805.25 should be divided by 52 weeks, which yields an average weekly wage of $111.64 and compensation rate of $74.43. The figure of $111.64 is an *average weekly wage that is fair* and just to both sides in this claim. It takes into account that [Nay] was working a temporary assignment that most likely would have ended once he worked 520 hours, and it annualizes the total wages that [Nay] likely could have expected to earn in the assignment.

(Emphasis added).

Nay also challenges Conclusions of Law 3 through 7. For the purposes of this appeal, we focus on two relevant challenged conclusions of law—Conclusions of Law 3 and 5. In Conclusion of Law 3, the Commission concluded that "[f]or the reasons stated above, calculation of [Nay's] average weekly wage via [Method 3] *does not yield results that are fair* and just to both parties."[1]  (Emphasis added). In the conclusion of law named Conclusion of Law 5, the Commission concluded that "[u]sing [Method

---

[1] The Commission's Opinion and Award included two Conclusions of Law 3. The Conclusion of Law 3 quoted above is the first Conclusion of Law 3 to appear in the Opinion and Award. The second Conclusion of Law 3 states, "[d]ue to the lack of sufficient evidence of similarly situated employees, [Nay's] average weekly wage cannot be calculated pursuant to [Method 4] of [N.C.G.S. § 97-2(5).]"

5] of calculating [Nay's] average weekly wage pursuant to N.C.[G.S.] § 97-2(5) *produces results that are fair* and just to both parties." (Emphasis added).

Methods 3 and 5 are the two methods under N.C.G.S. § 97-2(5) applicable to this case.

. . .

> [Method 3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained.

. . .

> [Method 5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C.G.S. § 97-2(5) (2019). On appeal, both parties stipulate that Methods 1, 2, and 4 are inapplicable. Although Nay's brief challenges Finding of Fact 13, which addresses the application of Methods 1, 2, and 3, Finding of Fact 14, which addresses Method 4, and Finding of Fact 15, which addresses Method 5, we only address his challenge to those findings of fact relating to Methods 3 and 5 in light of the stipulation that Methods 1, 2, and 4 were inapplicable in this matter.

**A. Standard of Review**

"The determination of [a] plaintiff's average weekly wages requires application of the definition set forth in the Workers' Compensation Act, and the case law construing that statute[,] and thus raises an issue of law, not fact." *Boney v. Winn Dixie, Inc.*, 163 N.C. App. 330, 331-32, 593 S.E.2d 93, 95 (2004) (internal marks and citation omitted). "We therefore review the Commission's calculation of [Nay's] average weekly wages *de novo*." *Tedder v. A & K Enterprises*, 238 N.C. App. 169, 173, 767 S.E.2d 98, 102 (2014). Additionally,

> [o]ur review of a decision of the Industrial Commission is limited to determining whether there is any competent evidence to support the findings of fact, and *whether the findings of fact justify the conclusions of law. . . .*
>
> Average weekly wages are determined by calculating the amount the injured worker would be earning but for his injury. The calculation is governed by N.C.G.S. § 97-2(5), which sets out five distinct methods for calculating an injured employee's average weekly wages. The five methods are ranked in order of preference, and each subsequent method can be applied *only if* the previous methods are inappropriate.

*Id.* at 173-74, 767 S.E.2d at 101-02 (emphasis added) (internal citations omitted) (internal marks omitted).

"[T]he calculation of an injured employee's average weekly wages is governed by N.C.[G.S.] § 97-2(5)." *Conyers v. New Hanover Cnty. Sch.*, 188 N.C. App. 253, 255, 654 S.E.2d 745, 748 (2008). "The dominant intent of [N.C.G.S. § 97-2(5)] is to obtain results that are fair and just to both employer and employee." *Id.* at 256, 654 S.E.2d at 748. In making this calculation, N.C.G.S. § 97-2(5) does "not allow the inclusion of

wages or income earned in employment or work other than that in which the employee was injured." *McAninch v. Buncombe Cnty. Sch.*, 347 N.C. 126, 134, 489 S.E.2d 375, 380 (1997).

The Commission's Findings of Fact 13 and 15 are actually conclusions of law to the extent that they declared a particular method of calculating Nay's average weekly wages to be fair or unfair. The Commission's classification of its own determination as a finding or conclusion does not govern our analysis. *See Watts v. Borg Warner Auto., Inc.*, 171 N.C. App. 1, 14, 613 S.E.2d 715, 724, *aff'd per curiam*, 360 N.C. 169, 622 S.E.2d 492 (2005). Accordingly, we review de novo the Commission's declaration that a Method 3 calculation of Nay's average weekly wages under N.C.G.S. § 97-2(5) was unfair in Finding of Fact 13, and that a Method 5 calculation of Nay's average weekly wages under N.C.G.S. § 97-2(5) was fair in Finding of Fact 15. *See Tedder*, 238 N.C. App. at 173, 767 S.E.2d at 102.

### B. Fairness

"Results fair and just, within the meaning of [N.C.G.S. § 97-2(5)], consist of such average weekly wages as will most nearly approximate the amount which the injured employee *would be earning* were it not for the injury, in the employment in which he was working at the time of his injury." *Liles v. Faulkner Neon & Elec. Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 796 (1956) (internal marks omitted). We turn first to determine whether Method 3 was fair as applied in calculating Nay's average

weekly wages. If we determine Method 3 to be fair, we need not consider Method 5.[2] *See Tedder*, 238 N.C. App. at 174, 767 S.E.2d at 102.

To be consistent with the rule for determining fairness as to average weekly wages from *Liles*, we must consider "the amount which [Nay] *would be earning* were it not for the injury, in the employment [of Cornerstone] in which he was working at the time of his injury." *Id.* Nay was earning $11.00 per hour at the time of his compensable back injury and would have continued earning $11.00 per hour but for the compensable back injury he suffered. *See id.* Nay was in the employ of Cornerstone at the time of his compensable back injury, and whether he would have later transitioned to FieldBuilders or another employer is irrelevant.

In considering whether a Method 3 calculation of Nay's average weekly wages would be fair, the lack of a definite employment end date for Nay with Cornerstone is important. Although the goal was for Nay to obtain full-time employment with FieldBuilders, this was not guaranteed, and did not occur. Calculating Nay's average weekly wages according to what he earned from Cornerstone over the number of weeks he worked for the staffing agency fairly approximates what he would have earned but for the injury. The fact that a calculation of Nay's average weekly wages according to Method 3 produces wages to Nay that exceed Cornerstone's typical long-

---

[2] *See Wilkins v. Buckner*, ___ N.C. App. ___, ___ S.E.2d ___ (2020) (COA19-567) (unpublished). Although *Wilkins* "is an unpublished opinion and is not controlling legal authority, N.C. R. App. P. 30(e)(3), we find its reasoning persuasive and we hereby adopt it." *State v. Gardner*, 227 N.C. App. 364, 368, 742 S.E.2d 352, 355 (2013).

term payments to employees does not make Method 3 unfair, despite Cornerstone's arguments to the contrary. Nay continued his relationship with Cornerstone after his injury and could have continued to earn money from Cornerstone indefinitely. Whether Method 5 could create a calculation of Nay's average weekly wages that is *more fair* than Method 3, such as by calculating Nay's chances of obtaining full-time employment with FieldBuilders or another client of Cornerstone, does not determine whether Method 3 is fair. Calculating Nay's average weekly wages according to Method 3 is fair under our caselaw, as Cornerstone was Nay's employer at the time of the injury, and Method 3 averages Nay's earnings over the course of his employment at Cornerstone, not a hypothetical 52 week period. Regardless of whether Method 5 could be *more fair* than Method 3, Nay's average weekly wages calculated under Method 3 are fair.

This case is not like *Tedder*, where we determined a Method 3, and even a Method 5, calculation of the plaintiff's average weekly wages according to the amount earned divided by the number of weeks worked was unfair. *Tedder*, 238 N.C. App. at 175, 767 S.E.2d at 103. In *Tedder*, the plaintiff was hired "to fill in for one of its full-time delivery drivers who was scheduled to undergo surgery . . . [and] would be absent for seven weeks on medical leave." *Id.* at 172, 767 S.E.2d at 100. After one week on the job earning $625.00 per week, the plaintiff suffered a compensable injury. *Id.* at 172, 767 S.E.2d at 101. In determining that a Method 3 calculation was unfair, we

emphasized that the plaintiff "would have earned that $625[.00] wage for no more than seven weeks, until his temporary job ended." *Id.* at 175, 767 S.E.2d at 103. Here, however, Nay's employment relationship with Cornerstone, like most at-will employment in this State, did not have a definite, specified end date, whereas the plaintiff's employment period in *Tedder* was definite in light of being hired to work for the defendant temporarily for a specified, limited period of seven weeks. *See id.* at 172, 767 S.E.2d at 101. Regardless of whether Nay or Cornerstone anticipated Nay would be hired by FieldBuilders, such a hire was not definite or guaranteed.

## CONCLUSION

In our de novo review of the Record, we determine that a calculation of Nay's average weekly wages under Method 3 of N.C.G.S. § 97-2(5) would be fair and just—appropriate under *Tedder* and the definitions from our caselaw. Accordingly, the Commission erred in Conclusions of Law 3 and 5 in concluding that Method 3 was unfair and reaching Method 5 to calculate Nay's average weekly wages. "We therefore reverse the [22 February 2019 Opinion and Award] of the Full Commission and remand for entry of an Award in accordance with this opinion." *Conyers*, 188 N.C. App. at 261, 654 S.E.2d at 752.

REVERSED AND REMANDED.

Judge ZACHARY concurs.

Judge ARROWOOD concurs in the result only.