IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-247

Filed 1 October 2024

North Carolina Industrial Commission, I.C. No. 20-028694

TRAVIS JAMES TAYLOR, Employee, Plaintiff,

v.

SOUTHLAND INDUSTRIES, INC., EMPLOYER, OLD REPUBLIC INSURANCE COMPANY, Carrier GALLAGHER BASSETT SERVICES, Third-Party Administrator, Defendants.

Appeal by defendants from opinion and award entered 30 November 2023 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 September 2024.

*R. Steve Bowden & Associates, by Edward P. Yount, for the plaintiff-appellee.*

*Bill Faison Law, by Bill Faison, for the plaintiff-appellee.*

*Hendrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, Samuel Edward Barker, and Amanda Brookie McDonald, for the defendants-appellants.*

TYSON, Judge.

Southland Industries, Inc. ("Southland") and Old Republic Insurance Company (collectively "Defendants") appeal from an opinion and award of the North Carolina Industrial Commission (the "Commission"). We affirm.

## I. Background

Merck Pharmaceutical contracted with Jacobs Project Management Company ("Jacobs") to serve as general contractor on its construction project located in Durham. Jacobs hired Southland as a subcontractor on the Merck Project. Southland was a signatory contractor with Local Union 421 ("Union") in Durham, which required it to hire Union members to supply their manpower. Travis Taylor ("Plaintiff") is a journeyman pipefitter Union member and was assigned to Southland for work on the Merck Project.

Plaintiff joined the Union in the fall of 2018. Tim Clark, then dispatcher for the Union, emailed Plaintiff on 12 May 2020 to report to Southland for work on the Merck Project at 6:30 a.m. on 18 May 2020. The email did not provide an end date or estimated length of his assignment to Southland for the Merck project. Plaintiff was informed the *per diem* was $95.00 for workers, who lived fifty or more miles away from the project site, and assigned to work the night shift from 4:00 p.m. until 2:30 a.m.

Plaintiff attended orientation and began work on 21 May 2020. Plaintiff's job duties included the installation and repair of heating, ventilation, and air conditioning ("HVAC") systems by obtaining, handling, rigging, and installing materials and equipment. Plaintiff was hired to weld, operate hand and power tools, ladders, and aerial lifts.

Plaintiff was moving a piece of plywood when he stepped into a two-feet-deep hole, previously covered, but was uncovered on 25 July 2020. Plaintiff sustained three fractures in his right ankle.

Jacobs terminated its contract with Southland on the Merck Project on 21 August 2020. All Southland journeyman pipefitters were laid off and none continued to work for Southland on the Merck project after 26 August 2020.

Plaintiff filed a Form 18 with the Commission, notified Defendants of his ankle fractures, and alleged an average weekly wage of $2,964.25, with a compensation rate of $1,066.00. Defendants filed a Form 63 with the Commission, conditionally accepting the indemnity and medical benefits of Plaintiff's injury on 2 September 2020. Southland continued to pay Plaintiff's wages through 9 August 2020 and Defendants initiated weekly benefits at the compensation rate of $1,021.38 without prejudice.

Defendants filed a Form 60 accepting the compensability of Plaintiff's injury noting an average weekly wage of $421.25 with a corresponding compensation rate of $280.85 on 9 October 2020. Plaintiff filed a Form 33 request for hearing on the issue of calculating Plaintiff's average weekly wage and compensation rate on 27 October 2021.

The deputy commissioner heard the matter on 24 May 2022, found Plaintiff's average weekly wage as $2,027.98, a compensation rate of $1,358.75, and issued an amended opinion and award on 5 December 2022. The deputy commissioner

calculated the average weekly wage using Method 3 of N.C. Gen. Stat. § 97-2(5) (2023). Plaintiff was awarded $1,066.00 weekly, the maximin compensation rate for 2020, the year of his injury.

Defendants appealed to the Full Commission on 16 December 2022, which held a hearing on 4 May 2023. The Full Commission found Method 3 was the appropriate method and calculated Plaintiff's average weekly wage as $2,027.99, with a compensation rate of $1,352.06, which exceeded the maximum compensation rate for 2020. Plaintiff was awarded the maximin compensation rate of $1,066.00.

Defendants were credited for the seven weeks of Plaintiff's salary continuation from the date of accident through 20 August 2020, and for payments from 26 July 2020 through 8 October 2020. Defendants were also entitled to an offset for compensation of $280.85 from 9 October 2020. The Full Commission filed a unanimous opinion and award on 30 November 2023. Defendants timely appealed.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 97-86 (2023).

## III.    Issue

Defendants argue the Full Commission erred in its calculation of Plaintiff's average weekly wage and compensation rate.

## IV.    Standard of Review

This Court reviews whether a particular method of determination of an average weekly wage "produces results that are 'fair and just' as a question of fact the is subject to the 'any competent evidence' standard in the absence of a showing that the Commission's determination lacked sufficient evidentiary support[.]" *Nay v. Cornerstone Staffing Sols.*, 380 N.C. 66, 85, 867 S.E.2d 646, 659 (2022).

This Court has held: "The determination of the [P]laintiff's average weekly wage requires application of the definition set forth in the Workers' Compensation Act, and the case law construing the statute[,] and thus raises an issue of law, not fact." *Boney v. Winn Dixie, Inc.*, 163 N.C. App. 330, 331-32, 593 S.E.2d 93, 95 (2004) (citation and internal quotation marks omitted); *see* N.C. Gen. Stat. § 97-2(5) (2023). This Court reviews the Commissions' calculation of Plaintiff's average weekly wage *de novo. Boney*, 163 N.C. App. At 331-32, 593 S.E.2d at 95.

## V. Average Weekly Wage

Defendants argue the Full Commission erred by calculating Plaintiff's average weekly wage by using Method 3. N.C. Gen. Stat. § 97-2(5) (2023).

## A. Five Methods of Computation

N.C. Gen. Stat. § 97-2(5) sets out five distinct methods for calculating an injured employee's average weekly wages:

> [Method 1:] "Average weekly wages" shall mean the earnings of the injured employee in the employment in which the employee was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52[.]

[Method 2:] [B]ut if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.

[Method 3:] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained.

[Method 4:] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

[Method 5:] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

*Id.* (2023).

This Court has held: "The five methods are ranked in order of preference, and each subsequent method can be applied only if the previous methods are inappropriate." *Tedder v. A&K Enters.*, 238 N.C. App. 169, 174, 767 S.E.2d 98, 102 (2014).

- 6 -

### 1. *Method 3*

The Commission determined the first and second methods set out in N.C. Gen. Stat. § 97-2(5) had no application to Plaintiff, given that he had not been employed by Southland for the fifty-two weeks period immediately preceding his injury.

The statutory Method 3 is to be applied when the employee has worked on the job for a period of fewer than fifty-two weeks. *Id.* at 175, 767 S.E.2d at 102. Under this method, the average weekly wages are calculated by dividing the total earnings on the job by the number of weeks or portion of weeks the employee worked. *Id.* This amount was calculated by dividing Plaintiff's total unchallenged earnings, $19,265.90, by the 9.5 total number of weeks he had worked. *See Id.*

Plaintiff's weekly wage was $2,027.99. Plaintiff's computed weekly workers' compensation rate was $1,352.06, which exceeded the maximum weekly compensation rate of $1,066.00 for 2020. *See* N.C. Gen. Stat. § 97-29 (a) (2023) ("When an employee qualifies for total disability, the employer shall pay or cause to be paid, as hereinafter provided by subsections(b) through (d) of this section, to the injured employee a weekly compensation equal to sixth-six and two-thirds percent (66 2/3%) of his average weekly wages, but not more than the amount established annually to be effective January 1 as provided herein, nor less than thirty dollars ($30.00 per week.").

### 2. *Method 5*

Defendant argues the Commission's utilization of Method 3 is not "fair and just

to both parties" because Jacobs terminated all of Southland's work on 21 August 2020 for the Merck Project and none of its workers were employed for 52 weeks. Defendants argue the Commission failed to make any findings of fact using Method 3 would be "fair and just to both parties."

Defendant argues the Commission should have applied Method 5, by taking Plaintiff's total earnings and dividing those earnings by 52 weeks and assert Finding of Fact 29 contains "generalities." *Liles v. Faulkner Neon & Elec. Co.*, 244 N.C. 653, 660. 94 S.E.2d 790, 796 (1956).

The Commission found:

> 29. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that having considered the methods for calculation of Plaintiff's average weekly wage set forth in N.C. Gen. Stat. § 97-2(5) and, given the credible evidence presented on the issue and the applicable law, finds the third method to be appropriate in this case. The first and second methods are inappropriate because in this case Plaintiff worked less than 52 weeks immediately preceding the injury in the employment of injury. The third method applies to situations in which employment extended over a period of fewer than 52 weeks prior to the injury and calculates the average weekly wage by "dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages," provided the results are fair and just to both parties. The preponderance of the available credible evidence in this case establishes that, as of the date of injury, Plaintiff was an employee of Defendant-Employer, having earned $19,265.90 in total wages over his 9.5 weeks of employment. $19,265.90 divided by 9.5 equals $2,027.99. This results in the maximum compensation rate of $1,066.00 ($2,027.99 multiplied by .6667, resulting in $1,352.06 which exceeds

the applicable maximum weekly compensation rate for 2020). Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds this result is fair and just to both parties and this method of computation is appropriate.

The Commission also made the following unchallenged findings of fact:

17. Tim Clark, who was the dispatcher at Local 421 at the time Plaintiff was hired for the Merck jobsite, sent Plaintiff an email dated May 13, 2020 with the opportunity to begin work for Southland at the Merck project. The email provided information regarding required documentation, location, parking, time and date of arrival, shift information, per diem, hotel information, and contact information; it did not provide an end date or an estimated length of assignment. Mr. Clark testified that other contractors were continuing to perform pipefitting work at the Merck jobsite at least as of December 2020 and jobs for those contractors were available through Local 421. He testified that pipefitting work continued at the Merck site at the time of the hearing and that Plaintiff would have been qualified for the ongoing pipefitting work with other contractors if he had been able to return to work. As with Plaintiff's hiring in May 2020, no specific end date for the work had been provided for the ongoing pipefitting work. He testified that "but for [Plaintiff] being injured and Southland being kicked off the job, [Plaintiff] could have been on the Merck site for a total of two years now." Southland did not have other work for pipefitters in the Local 421 geographic area until January 2022. Mr. Clark testified that if Plaintiff had been able to work, Plaintiff could have taken a job with Southland anywhere in the United States and remain a member of Local 421. Southland could have hired Plaintiff for another project elsewhere even if one was unavailable in the Local 421 area. He further testified that Southland, a national company, did have other ongoing projects outside the Local 421 region.

18. Keith Batson, the business agent for Local Union 421

at the time of Plaintiff's hiring, and who was the financial secretary for the Union at the time of his testimony, testified that he attended the pre-job meeting with Southland representative, Samir Mustafa, in October 2019 to discuss the details of the upcoming Merck project. He testified that the job was expected to last until the first quarter of 2021, and that there was no discussion at the meeting of the job potentially ending in August 2020. Both Mr. Batson and Mr. Clark testified that at the pre-job meeting Mr. Mustafa indicated that the Merck project was estimated for completion in the first quarter of 2021. Mr. Batson testified consistently with Mr. Clark that "but for [Plaintiff] being injured, that he would have been qualified potentially to go back to work on the jobsite."

19. As of the date of the hearing in this matter, Plaintiff was still employed with Southland, although he had not worked since his injury. But for his July 25, 2020 accident and resulting injury, Plaintiff could have and most likely would have continued to earn money working for Southland as a journeyman plumber and pipefitter for an indefinite period. Furthermore, but for Plaintiff's July 25, 2020 accident and resulting injury, if not working with Southland within the Local Union 421 area at the Merck project he could have and most likely would have continued to earn money working as a journeyman plumber and pipefitter for Southland for an indefinite period in an area outside the Local Union 421 area. Alternatively, but for Plaintiff's July 25, 2020 accident and resulting injury, Plaintiff could have and most likely would have continued to earn money working as a journeyman plumber and pipefitter for a subsequent contractor at the Merck project or for another contractor on projects within or without the Local Union 421 for an indefinite period.

Contrary to Defendant's arguments, the above unchallenged findings of fact identify Plaintiff's ability to continue working for the Union. Unlike in the facts in *Hendricks v. Hill Realty Grp., Inc.*, 131 N.C. App. 859, 509 S.E.2d 801 (1998) or

*Conyers v. New Hanover Cty. Sch.*, 188 N.C. App. 284, 409 S.E.2d 103 (1991), the Commissions' unchallenged findings of fact do not show a limited temporal nature of Plaintiff's employment.

The Commission found Method 3 provides the method for calculating Plaintiff's average weekly wages which "*most nearly approximate[s] the amount which [Plaintiff] would be earning . . . in the employment in which he was working at the time of his injury.*"  *Liles*, 244 N.C. at 658, 94 S.E.2d at 794.  The Commission found and concluded Method 3 is "fair and just to both parties and this method of computation is appropriate."  N.C. Gen. Stat. § 97-2(5).  Defendants' argument is overruled.

## VI.   Conclusion

In descending order of preference, Method 3 of N.C. Gen. Stat. § 97-2(5) provides a "fair and just" calculation for both parties under these facts. *Id.*  The Commission's unchallenged findings and conclusion that Method 3 provides the best method for calculating Plaintiff's average weekly wage is affirmed.  *It is so ordered.*

AFFIRMED.

Chief Judge DILLON and Judge WOOD concur.